A06A0378. BENNETT v. THE STATE.
(631 SE2d 402)

SMITH, Presiding Judge.

Stephen Lamar Bennett was convicted of one count of child molestation. His amended motion for new trial was denied, and he appeals, asserting four enumerations of error. We find no reversible error and affirm.

1. Bennett contends the trial court erred in instructing the jury that it could consider "level of certainty" in assessing the reliability of an eyewitness identification. The trial court gave the then current pattern instruction, Council of Superior Court Judges, Suggested Pattern Jury Instructions, § 1.35.10 (3d ed. 2003), later disapproved by the Georgia Supreme Court in *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005). In *Brodes*, the Supreme Court reversed, concluding that under the circumstances of that case the "level of

---

[10] See id.

certainty" portion of the charge was harmful error, in light of the "lack of correlation between a witness's certainty in his or her identification of someone as the perpetrator of a crime and the accuracy of that identification." Id.

The circumstances of this case, however, are quite different. In *Brodes*, the victims identified Brodes at trial as the perpetrator and testified they were " 'absolutely certain' " of the identification. Id. at 435. But "the only evidence connecting Brodes to the crimes was the eyewitness identification of him by the two victims, one of whom was unable to pick Brodes'[s] photo in a photo array, and the other of whom was able to describe to police the weapon used in the crimes but was unable to give any physical characteristics of the perpetrator." Id. at 442. Similarly, in *Brown v. State*, 277 Ga. App. 396 (626 SE2d 596) (2006), we reversed because "the only evidence linking Brown to the crime was the victim's identification testimony." Id. at 397 (2).

Here, in contrast, the State presented substantial evidence other than eyewitness identification linking Bennett to the crime. The offense occurred when a man entered a grocery store bathroom and inserted his penis through a hole in a toilet stall partition while the victim was seated inside. After the incident, the eight-year-old victim and his cousin ran out of the bathroom to tell the victim's father. They saw the perpetrator leaving the store and heading toward a "Miller Lite van." The victim's father testified that after his son told him what had happened, he called out to this individual, who immediately "took off running" toward a white minivan with Miller Lite logos on it.

With this information, a police investigator considered Bennett to be a suspect and interviewed him. During the interview, Bennett first claimed that he was not at the store when the crime occurred, then admitted that the store was one of his accounts and claimed that he was in the parking lot of the store to meet a girlfriend that day. After denying that he went in the store at all, he stated that he "maybe" was in the store, then that he was in the store "around the beer" but was not near the bathroom, then that he "may have been around the bathroom but I didn't go in." At trial, Bennett denied going to the grocery on the day of the crime, but he acknowledged that he had called at the grocery as a beer "pre-salesman" once or twice a week for two or three years, that he drove a white van with a Miller Lite logo, and that he knew about the hole in the bathroom partition.

The victim described the perpetrator as wearing an electronic device on his side with an antenna and a video screen; the detective testified that Bennett wore such a device to place orders for his employer. In videotaped interviews, the victim and his father identified a shirt obtained from Bennett at the time of his arrest as the one the perpetrator was wearing. Moreover, although the victim's father identified Bennett at trial, the victim did not and was unable to

select Bennett from a photographic lineup. He never expressed any level of certainty that Bennett was the perpetrator. The victim's father acknowledged that his son, not he, saw the perpetrator in the bathroom, and he was only "pretty sure" in identifying Bennett from a photographic lineup.

Under these circumstances, the "level of certainty" portion of the identity charge was harmless because it is highly probable that the error did not contribute to the judgment. *Dunson v. State*, 275 Ga. App. 515, 517 (2) (621 SE2d 525) (2005). See also *Waddell v. State*, 277 Ga. App. 772, 778-779 (5) (627 SE2d 840) (2006).

2. Bennett contends the State failed to prove an element of the offense because it "failed to present any evidence, whatsoever, that appellant knew that there was a child occupying the restroom stall." But

> [t]his Court has previously held that knowledge of the victim's age is not an element of the crime of child molestation. . . . The legislature has carefully worded the child molestation statute so that the defendant's knowledge of the age of the victim is not an element of the crime, just as it is not an element of the crime of statutory rape.

(Citations and punctuation omitted.) *Schultz v. State*, 267 Ga. App. 240, 241-242 (1) (599 SE2d 247) (2004).

As noted above, Bennett eventually admitted to the police detective that he was near the restroom, although he denied entering it. He also admitted that he was aware of the hole in the partition. The victim testified that the perpetrator entered the bathroom after he went in, because he heard the door squeak as it opened and heard his footsteps. This was the only time he heard the door open. The State introduced photographs showing the close proximity of the beer aisle to the restrooms, as well as photographs showing that the interior of the toilet stall was visible through the approximately four-inch hole in the partition as well as under the partition, which was sixteen or eighteen inches from the floor. This evidence was sufficient to allow the jury to conclude that Bennett saw the victim enter the restroom from his vantage point in the beer aisle nearby and followed him into the restroom, where he also was able to view the occupant of the stall either under the partition or through the hole in the partition. This enumeration of error therefore is without merit.

3. Bennett next contends that the trial court erred in giving the jury charge before closing arguments. It is true that the requirement of OCGA § 5-5-24 (b) that jury instructions be given after closing arguments are completed is mandatory, as noted in *Griffith v. State*, 264 Ga. 326, 327 (2) (444 SE2d 794) (1994), cited by Bennett. But the

Georgia Supreme Court, while reaffirming *Griffith*, has also made plain that "consent bars assertion of the issue on appeal." *Williams v. State*, 277 Ga. 853, 856 (3) (596 SE2d 597) (2004). Here, as in *Williams*, the trial court explained to the jury that the usual order of instructions and closing arguments would be reversed, with the consent of the parties. Bennett's counsel had no objection to the charge. This enumeration of error therefore presents nothing for appeal. Id.

4. Finally, Bennett contends that his constitutional right to be present at all critical stages of the proceedings was denied when a bench conference took place during voir dire, and that his trial counsel was ineffective in failing to object to this. We disagree.

The bench conference took place when a bailiff informed the trial court that a juror thought that he might know the victim's parents. The juror was not actually present during this brief colloquy. The judge asked the attorneys if they wanted to question this juror further because he "told the bailiff he thinks he may know the parents of the alleged victim." Bennett's counsel indicated that he wanted to ask the juror some more questions. At this point the record shows that the bench conference ended. The juror was then questioned at some length, and Bennett's counsel decided to strike him.

Trial counsel's testimony at the hearing on the motion for new trial was somewhat contradictory. In response to questioning by Bennett's appellate counsel, he did seem to agree that the strike took place during the bench conference. Later in his testimony, however, trial counsel agreed that the bench discussion ended before the juror was questioned and stated that Bennett was present when that took place. Bennett's appellate counsel agreed that the testimony "kind of went both ways." Contradictions in the testimony on a motion for new trial are resolved by the trial court, *Ramsey v. State*, 272 Ga. 28, 30 (3) (526 SE2d 842) (2000), and the trial court resolved the conflict in favor of the official transcript.

> In *Hanifa v. State*, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998), we reiterated the long-standing rule that embodied within the Georgia constitutional right to the courts . . . is a criminal defendant's right to be present and see and hear, all the proceedings which are had against him on the trial before the Court. A colloquy between the trial judge and the jury is a part of the proceedings [at] which the defendant and counsel are entitled to be present.

(Citations, punctuation and emphasis omitted.) *Pennie v. State*, 271 Ga. 419, 421 (2) (520 SE2d 448) (1999). Bennett relies upon *Hanifa* and *Pennie*, but neither decision is apposite here. This was not a

colloquy between the trial judge and the jury, but a brief bench conference. The Georgia Supreme Court has held that a conference "of limited scope" involving only the trial court and counsel is not "a 'critical' stage of the proceedings." *Ferrell v. State*, 261 Ga. 115, 122-123 (12) (401 SE2d 741) (1991). No juror was present at the bench conference. Moreover, Bennett "could not have made a meaningful contribution" to the bench conference. (Citations and punctuation omitted.) *Barrett v. State*, 275 Ga. 669, 671-672 (4) (571 SE2d 803) (2002). "[T]here was simply no error in proceeding with the limited inquiry outside the presence of the defendant." *Coburn v. State*, 252 Ga. App. 315, 318 (2) (555 SE2d 750) (2001) (brief colloquy with alternate juror regarding alleged misconduct). Trial counsel's failure to object to this brief conference therefore was not ineffective. "Failure to raise a meritless objection cannot constitute ineffective assistance of counsel. [Cits.]" *Wright v. State*, 265 Ga. App. 855, 858 (1) (c) (595 SE2d 664) (2004).

*Judgment affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED MAY 12, 2006 — 

*Brian Steel*, for appellant.
*David McDade*, District Attorney, *Christopher R. Johnson*, Assistant District Attorney, for appellee.