## S13A1036. MATHIS v. THE STATE.
(750 SE2d 308)

THOMPSON, Chief Justice.

Appellant Jessie Ben Mathis was convicted of felony murder, armed robbery, aggravated assault, and possession of a weapon during the commission of a crime in connection with the shooting death of Souphoth Thammavongsa.[1] Appellant's motion for new trial was denied, and he now appeals that decision and his conviction. We find no reversible error and affirm.

Viewed in the light most favorable to the verdict, the jury was authorized to find that on October 19, 2008, appellant and co-conspirators

---

[1] The crimes occurred on October 19, 2008. A Fulton County grand jury returned an indictment charging appellant and co-defendants Gary Steve Kilgore and Dexter Otis Armstrong with malice murder; felony murder (three counts); armed robbery (seven counts); aggravated assault (eight counts); possession of a weapon during commission of a crime; and possession of a firearm by a convicted felon. Trial commenced on February 7, 2011, and on February 16, 2011, a jury found appellant guilty of felony murder (two counts), armed robbery (three counts), aggravated assault (eight counts), and possession of a weapon during a crime. Appellant was sentenced to life imprisonment for felony murder, twenty years to serve on two armed robbery counts to run consecutive to both the felony murder and each other, and twenty years to serve on each of four counts of aggravated assault also to run consecutive to the felony murder, the two counts of armed robbery and each other, and five years consecutive for possession of a weapon during commission of a crime. The remaining counts were merged or vacated under *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). Appellant filed a motion for new trial on February 24, 2011, which was amended on June 4, 2012 and October 2, 2012, with a final hearing held October 30, 2012. Appellant filed a premature notice of appeal on November 28, 2012 and the trial court's order denying his motion for new trial was entered February 4, 2013. The appeal was docketed to the April 2013 term of this Court and was submitted for decision on the briefs.

Gary Kilgore and Dexter Armstrong entered the Thai Video store shouting "ATF, get on the floor!" Store customers were forced to the floor, and the owner of the store was shot and killed. The assailants, including appellant, then forced the owner's son to the back of the store where they showed him the bloody gun and his father's body and threatened to shoot him if he did not produce additional money. When this proved unsuccessful, appellant and the others threatened and robbed the customers before leaving the store.

Shortly after fleeing the crime scene, Armstrong met with his then-girlfriend, Theresa Anderson, gave her close to $1,300, which he asked her to hold for him,[2] and told her that he, Kilgore and appellant had robbed the video store and that Kilgore had shot and killed the owner. Anderson later told a friend about this exchange, and the friend called police. Relying on this tip, police arrested appellant and the others, and detained Anderson for questioning. Anderson subsequently disclosed Armstrong's statements, including those implicating appellant and Kilgore. In addition, two witnesses identified appellant as one of the assailants through photographic lineups and made in-court identifications of him at trial.

1. We conclude the evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crime of felony murder and the other crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant claims the trial court erred in failing to question or excuse an allegedly sleeping juror. During presentation of the State's case, appellant's counsel expressed concern to the court that one of the jurors appeared to be sleeping. In response, the court instituted a "buddy system" between jurors to have them help each other stay awake. Later in the trial, counsel revisited the issue, asking that the juror in question be replaced with an alternate. The State objected, arguing there was no proof that the juror had been sleeping, and the trial court denied appellant's motion. However, prior to jury deliberations at the end of trial, the court gave appellant's counsel the opportunity to renew her motion to replace the juror, and she declined. As counsel made no contemporaneous request for the trial court to conduct an inquiry and later declined to move to excuse the juror, we find this issue has been waived. See *Smith v. State*, 277 Ga. 213, 216 (586 SE2d 639) (2003); *Joyner v. State*, 208 Ga. 435, 438 (67 SE2d 221) (1951).

---

[2] Anderson refused to take the money but allowed Armstrong to leave it in her car.

Even assuming this issue is properly before the Court, we find no error. Pursuant to OCGA § 15-12-172,[3] a trial court is statutorily vested with the discretion to replace a juror with an alternate at any time during the proceedings as long as the court has a sound legal basis to do so. *Smith v. State*, 284 Ga. 17, 22 (663 SE2d 142) (2008); *Brooks v. State*, 281 Ga. 14, 18 (635 SE2d 723) (2006). Further, this court will not interfere with a trial court's decision regarding removal of a juror from a panel absent an abuse of that court's discretion. *Chance v. State*, 291 Ga. 241, 243 (728 SE2d 635) (2012); *Pinkins v. State*, 243 Ga. App. 737, 740 (3) (534 SE3d 192) (2000). When confronted with a situation involving a juror who appears to have fallen asleep during trial, counsel has a duty to bring the matter to the attention of the trial court, and the trial court has a duty to awaken the juror. *Smith*, supra; *Foster v. State*, 255 Ga. 425 (2) (339 SE2d 256) (1986). Here, the trial court took prompt action when the allegedly sleeping juror was brought to its attention by reminding all of the jurors to stay awake and instructing them to help each other stay awake.

Appellant argues that in addition to the actions taken, the trial court was required to conduct an inquiry to determine whether the juror had, in fact, been sleeping or was incapacitated. We disagree. Given that the only juror irregularity alleged in this case consisted of a relatively brief, single act of dozing, we find no abuse of discretion on the part of the trial court in concluding that its immediate remedial actions were sufficient. See *Smith*, supra; *Williams v. State*, 190 Ga. App. 361, 362 (378 SE2d 886) (1989). See also *Lamons v. State*, 255 Ga. 511, 512 (340 SE2d 183) (1986) (some irregularities in juror conduct are inconsequential). Compare *Gibson v. State*, 290 Ga. 6, 10 (717 SE2d 447) (2011) (trial court properly removed juror who repeatedly slept through presentation of evidence). As there appears to have been no sound legal basis to replace the juror, the trial court did not abuse its discretion in denying appellant's request that it do so. See *Herring v. State*, 224 Ga. App. 809, 811-812 (481 SE2d 842) (1997).

3. Appellant additionally claims his trial counsel was ineffective for failing to request that the trial court conduct an inquiry into whether the juror was sleeping. To prevail on a claim of ineffectiveness, appellant must show both that counsel's performance was

---

[3] This Code section provides, in pertinent part:
    If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated. . . .

deficient and that the deficient performance was prejudicial to his defense. *Strickland v. Washington,* 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984); *Smith v. Francis,* 253 Ga. 782, 783 (325 SE2d 362) (1985). If appellant fails to meet his burden of proving either prong of this two prong test, the reviewing court need not examine the other prong. *Strickland,* supra, 466 U. S. 668, 697 (IV). To satisfy the first prong, appellant must overcome the strong presumption that counsel's performance fell within a "wide range of reasonable professional assistance," and that counsel's decisions were made "in the exercise of reasonable professional judgment." Id. at 689-690. Moreover, the reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. *Smith,* supra at 784.

Appellant argues that without the information an inquiry could have provided, trial counsel was unable to make an informed decision on whether to renew her motion to remove the juror when this issue was re-visited by the trial court at the conclusion of the trial. At the motion for new trial hearing, appellant's counsel testified she chose not to renew the motion due to the fact there had been no further incidents involving the juror and the trial court had spoken to the juror and taken remedial action. However, counsel was not questioned as to why she initially chose to accept the trial court's remedial efforts without requesting additional inquiry. In the absence of evidence to the contrary, "counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim." *Washington v. State,* 285 Ga. 541, 543 (678 SE2d 900) (2009). In any event, this Court has determined that no further inquiry by the trial court was necessary under the circumstances presented in this case, see Division 2, supra, and we find trial counsel's failure to make such a request does not constitute deficient performance. See *Washington,* supra at 544. As appellant has failed to satisfy the first *Strickland* prong with regard to this enumeration of error, his ineffective assistance of counsel claim lacks merit.

4. Appellant asserts the trial court erred in allowing Anderson to testify about Armstrong's statements to her pursuant to the co-conspirator exception to the hearsay rule which provides that "[a]fter the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." OCGA § 24-3-5.[4] In order for this exception to apply, the State must show the existence of a conspiracy without

---

[4] Because appellant's trial occurred prior to the effective date of the new Georgia Evidence Code, former OCGA § 24-3-5 applies.

regard to the declarations of the co-conspirator. *Heard v. State*, 287 Ga. 554, 559 (697 SE2d 811) (2010). Existence of a conspiracy may be shown by direct or circumstantial evidence. *Brooks*, supra, 281 Ga. at 15. Further, "[c]onduct which discloses a common design, even without proof of an express agreement between the parties, may establish a conspiracy." *Heard*, supra at 559-560.

Here, evidence was presented that appellant and his co-defendants knew each other prior to the crime, they went to the Thai Video store together, Kilgore shot the owner who put a gun to Armstrong's head, and they worked together to rob the other victims before fleeing the store together. These facts show a common design and purpose to commit the robbery and establish the existence of a conspiracy. See *Freeman v. State*, 273 Ga. 137, 139 (539 SE2d 127) (2000). Armstrong's concealment of the robbery proceeds in Anderson's car at the time he made his statements establishes that the criminal enterprise was not at an end. Because there was evidence independent of the challenged statements to establish the conspiracy and the conspiracy was still in the concealment stage when the statements were made, the State met its burden under OCGA § 24-3-5, and the trial court did not err in concluding that Armstrong's statements were admissible as those of a co-conspirator. See *Young v. State*, 291 Ga. 627 (3) (732 SE2d 269) (2012); *Allen v. State*, 288 Ga. 263 (4) (702 SE2d 869) (2010).

5. Likewise, we find no error in the trial court's refusal to suppress appellant's pretrial and in-court identifications by State witnesses. Appellant claims that in the photographic array used by the State, his picture was visibly darker than the other pictures and his hairstyle and complexion were noticeably different. He argues that, as a result, his picture stood out from the others and equated to authorities telling the witnesses, "[t]his is our suspect." See *Davis v. State*, 286 Ga. 74, 76 (2) (a) (686 SE2d 249) (2009). Further, appellant asserts that under the totality of the circumstances, the suggestiveness of the State's lineup gave rise to a substantial likelihood of his misidentification by the witnesses.

> Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (Citations omitted.)

*Marshall v. State*, 285 Ga. 351, 352 (676 SE2d 201) (2009). Based on the evidence in the record, we find nothing inherently suggestive or

otherwise improper about the photographic lineups in this case. The lineup which included appellant consisted of six black males with goatees and similar hairstyles, none noticeably different from appellant or from each other. Witnesses were provided with several sets of photos rather than a single lineup, were not told that a suspect was, in fact, depicted in any of the lineups and thus were not led to an "all but inevitable identification" of appellant. *Clark v. State*, 271 Ga. 6, 12 (515 SE2d 155) (1999).

Nor do we find a substantial likelihood of irreparable misidentification of appellant by the State's witnesses due to the photographic lineup. Factors to be considered in determining admissibility of eyewitness identifications include: (1) a witness' opportunity to view the accused at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of accused; (4) the witness' level of certainty at the confrontation; and (5) the length of time between the crime and the confrontation. *Thomason v. State*, 268 Ga. 298, 303-304 (486 SE2d 861) (1997). Two separate witnesses identified appellant within weeks of the crime. Both testified they spent time looking at the assailants threatening their lives during the 30-45 minute robbery. Moreover, although each gave only a general description to police immediately after the robbery, both witnesses identified appellant from the photographic array with certainty.

6. Finally, appellant contends the trial court erred in denying his motion for directed verdict on two of the aggravated assault counts.[5] Appellant asserts these aggravated assault counts should have been dismissed because the indictment charged him with assaulting these victims "with intent to rob," thus requiring both an intent to rob on his part and reasonable apprehension of receiving bodily injury on the part of the victims. With respect to these two counts, neither of the named victims testified to having a reasonable apprehension of bodily injury. Indeed, one victim whose cell phone was stolen testified he was not afraid during the commission of the crime, while the other victim who was hiding during the robbery had no items taken from him by the assailants.

Aggravated assault requires an assault coupled with the intent to rob, however, there is no provision that property actually be taken. *Lucky v. State*, 286 Ga. 478, 482 (689 SE2d 825) (2010). Nor does the fact that a victim claims to have been unafraid preclude a finding of reasonable apprehension. *Bates v. State*, 275 Ga. 862, 865 (572 SE2d

---

[5] Specifically, appellant challenges the trial court's denial of his motion for directed verdict with respect to the aggravated assaults of Kelly Babb (Count 15) and Mose Brown (Count 17).

550) (2002). Here, both men got down on the floor when ordered to do so by the armed intruders, both heard gunshots, and both complied with the demand that they stay put until after the intruders left. In addition, one victim surrendered his cell phone as demanded and stated that he remained on the floor because he did not want to be killed. Accordingly, we find no error in the trial court's denial of appellant's motion for directed verdict on these two counts.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 21, 2013.

*Quen L. Banks*, for appellant.

*Tracy Graham-Lawson, District Attorney, Frances C. Kuo, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.