**SECOND DIVISION
BARNES, P. J.,
MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 20, 2013**

# In the Court of Appeals of Georgia

A13A1490. ARMSTRONG v. THE STATE.

RAY, Judge.

After a jury trial, Dexter Otis Armstrong was convicted of seven counts of aggravated assault (OCGA § 16-5-21 (a) (1)).[1] He appeals from those convictions and from the denial of his motion for new trial, arguing that the trial court erred in failing to give requested jury instructions, in allowing a witness to give improper character evidence, and in failing to replace a sleeping juror with an alternate juror. He also challenges the sufficiency of the evidence and contends that his trial counsel rendered

---

[1] Armstrong was charged with other offenses under the indictment, including one count of malice murder, three counts of felony murder, seven counts of armed robbery, one count of aggravated assault with intent to murder, and one count of possession of a firearm during a crime. At the close of the State's case, the trial court granted a directed verdict on two counts of armed robbery, and the jury acquitted him of the remaining charges.

ineffective assistance. Armstrong further argues that he should be acquitted because he was not tried within two terms of court despite his demand for a speedy trial. Finding no reversible error, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict." (Citation and punctuation omitted.) *Moore v. State*, 319 Ga. App. 696 (738 SE2d 140) (2013). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). So viewed, the evidence shows that on October 19, 2008, an armed man, later identified as Gary Mathis, entered the Thai Video store in Riverdale where Steven Ratsamy, Kelly Babb, Bounmy Kong, Mose Brown, Maceo Hill, and another man, known as Anthony, were playing poker and watching television. Mathis pointed his gun at the men and yelled "ATF, get on the ground." Believing the store was being raided by the government, the customers got down on the floor. A shot was then heard throughout the store, and it was later discovered that the store's owner had been shot.

The witnesses were lying face down during much of the incident, but they testified that they heard the voices of at least three perpetrators. Ratsamy testified that a second man, who was muscular and dark-skinned, pointed a gun him and said "I want to shoot you." After searching the store and stealing what they could, Ratsamy

2

heard the men ask "Where the money at? This ain't all of it. This ain't enough. Where it at? You know where the money at." Ratsamy testified that the men then stole his "car payment money" from him. Hill testified that the men stole about $600 or $700 from him.

Two of the perpetrators then took Kong , one of the store's employees, to the back office and showed them the dead body of his father-in-law, the store's owner. Kong was then asked "Where's the money? Where's the money?" A perpetrator pointed a gun at Kong and told him "I'm going to shoot you right now."

Mose testified that while he was hiding under a table, he heard one of the perpetrators yell out "I lost my telephone. Call Black. Call Black." After the robbery, the perpetrators remained inside the store searching for the cell phone. One of the men stole a cell phone from a customer. The missing cell phone was eventually located when the man used the stolen phone to call the missing one. Once the phone was found, the perpetrators fled the store.

Upon responding to the scene, police officers observed the body of a deceased Asian male in the back room. He had $3700 in his pocket and a bloody one hundred dollar bill in his hand. The victim died of a gunshot wound to the neck.

3

Teresa Anderson was Armstrong's live-in girlfriend at the time of the incident. Anderson testified that on the morning of the incident, Armstrong left their home at approximately 8:30 a.m. and took his son's cell phone with him. At approximately 1:30 p.m., Armstrong called Anderson from his son's cell phone and urgently asked her to meet him at a nearby gas station. At the gas station, Anderson got into Armstrong's car and said, "I got something I need to tell you, but I don't want to tell you." He then told her that he and his friends, Mathis and Kilgore had robbed a video store. He further told her that, during the robbery, the store's owner had pointed a gun at Armstrong and Mathis had shot the store's owner. Armstrong then gave Anderson $650 and asked her to take it home. When she refused, Armstrong concealed it in Anderson's car and drove away in his own car. Before they parted, he showed her an additional $600 that he had "stashed" and said that the other men were unaware of it. Anderson testified that she and Armstrong were being evicted from their apartment the following day, and that Armstrong used the robbery proceeds to pay for cell phone bills and car repairs.

The State presented evidence of cell phone records showing that, shortly before 1:00 p.m. on the day of the robbery, a call was placed from Armstrong's son's cell phone to Kilgore's (Armstrong's co-defendant) cell phone. Cell phone records also

4

showed that Armstrong's son's cell phone was used to call Anderson at 1:11 p.m. There was also evidence that Armstrong's son's cell phone was in close proximity to the cell phone tower closest to the Thai Video store during the time of the incident.

1. Armstrong contends that the evidence presented by the State was insufficient to authorize his convictions for aggravated assault, arguing that the evidence presented was insufficient to place him at the scene of the crime because none of the witnesses positively identified him as a perpetrator at the scene and his fingerprints were not among those recovered from the scene. He argues that the only evidence placing him at the scene is the testimony of his girlfriend, Anderson, and that such evidence, standing alone, was insufficient to convict him. We disagree.

When reviewing whether the evidence was sufficient to support the conviction,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crimes charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all the evidence* is to be considered in the light most favorable to the prosecution.

5

(Footnote and punctuation omitted.) *Roberts v. State*, 322 Ga. App. 659, 661 (2) (a) (745 SE2d 850) (2013).

The State presented the testimony of Anderson, Armstrong's girlfriend, that Armstrong had confessed that he was at the Thai Video store, that he had participated in the robbery, that Kilgore had saved his life when the store's owner pointed a gun to his head, and that he had at least $650 in proceeds from the robbery. However, this was not the only evidence presented at trial. The State also presented the testimony of several of the customers that at least three men were present at the store and at least two of the men had guns. The State also presented circumstantial evidence that Armstrong was at the store at the time of the robbery based on cell phone records reflecting that a call he made from a cell phone in his possession placed him near the store and that he had called one of his co-conspirators prior to the robbery. Although there was no scientific evidence or eyewitness identification of Armstrong,

> [i]t is well settled that circumstantial evidence can be sufficient to authorize a finding of guilt beyond a reasonable doubt. . . . Questions of reasonableness are generally decided by a the jury, and this Court will not disturb the jury's finding that the evidence was sufficient to exclude every hypothesis save that of guilt unless the verdict is unsupportable as a matter of law.

6

(Punctuation and footnote omitted.) Id. (finding evidence was sufficient to support verdict despite lack of fingerprint evidence or eyewitness testimony connecting defendant to crime when other circumstantial evidence indicated his involvement with crime). Thus, based on the totality of the circumstances, the evidence was sufficient to support the verdict, and Armstrong's enumeration is without merit.

2. Armstrong asserts that the trial court erred in failing sua sponte to give a jury charge on confessions and admissions relating to his statement to Anderson. Although he does not specify exactly which jury charge he believes was erroneously omitted in his appellate brief, Armstrong appears to argue that the trial court erred in failing to instruct the jury, consistent with OCGA § 24-3-53,[2] that "[a]ll admissions shall be scanned with care, and confessions of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction." However, Armstrong did not submit a written request for a jury instruction on this charge and did not object to the trial court's failure to provide such a jury charge at trial.

---

[2] OCGA § 24-3-53 was repealed by Laws 2011, Act 52, § 2, effective January 1, 2013. We note, however, that the provisions of former OCGA § 24-3-53 were carried forward without change into Georgia's new Evidence Code, where it is found at OCGA § 24-8-823.

7

This Court has held that

> it is not reversible error for the trial court to fail to give a request to charge that is not submitted in writing by the complaining party. Such a failure constitutes reversible error only where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence.

(Footnote omitted.) *Farley v. State*, 314 Ga. App. 660, 666 (5) (725 SE2d 794) (2012). Accord *Hunt v. State*, 166 Ga. App. 524, 525 (2) (304 SE2d 576) (1983) ("[a]bsent a timely request, the trial court did not err in failing to charge on the evidentiary weight to be given admissions and confessions or in failing to charge that an uncorroborated confession is insufficient to support a conviction") (citations omitted).

So viewed, we do not conclude that the failure to charge was reversible error. Armstrong's statement to Anderson was strongly corroborated by other evidence, including his sudden possession of an amount of money consistent with that stolen and the fact that cell phone records place him near the scene of the incident. Accordingly, any error in failing to give this charge was harmless. See *Bowley v. State*, 261 Ga. 278, 281 (5) (404 SE2d 97) (1991).

3. Armstrong next contends that his trial counsel rendered ineffective assistance by failing to provide a written request for a jury instruction on confessions and admissions.

In order to prevail on his claim of ineffective assistance, Armstrong must show both that trial counsel's performance was deficient and that the deficient performance was prejudicial to his defense to the point that there was a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. *Pruitt v. State*, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by this Court. *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). Here, Armstrong has not shown that his trial counsel's failure to request a jury charge on confessions and admissions was prejudicial to his defense in light of the fact that his statement to Anderson was corroborated by other evidence. See *Thorpe v. State*, 285 Ga. 604, 611- 612 (7) (678 SE2d 913) (2009).

4. Armstrong argues that the trial court erred by allowing a witness to give improper character evidence regarding his bad temper without declaring a mistrial or giving a curative instruction.

Armstrong did not testify at trial. During re-direct examination, the State questioned Anderson, Armstrong's ex-girlfriend, about her prior statement that she was "scared" of Armstrong. Anderson responded that Armstrong "has a temper sometimes." Counsel for Armstrong's co-defendant immediately objected, arguing that the statement went into improper character evidence. Armstrong's counsel also objected to the testimony without further explanation. Neither defense counsel specifically requested a curative instruction or sought a mistrial. The State voluntarily withdrew its question. The trial court did not explicitly rule upon defense counsel's objection nor did it sua sponte provide a curative instruction. Where an objection is made, "it is the duty of counsel to obtain a ruling on his motions or objections, and the failure to do so will ordinarily, as it does in this case, result in a waiver." (Citation and punctuation omitted.) *Evans v. State*, 288 Ga. App. 103, 107 (2) (653 SE2d 520) (2007). Under these circumstances, Armstrong has waived the alleged error. See *Clark v. State*, 282 Ga. App. 248, 252 (2) (638 SE2d 397) (2006).

5. Armstrong contends that the trial court erred by failing to question a sleeping juror and replace him with an alternate. We disagree.

During the presentation of the State's case, Armstrong's counsel expressed concern to the trial court that one of the jurors appeared to be sleeping and requested

10

that the trial court let the juror "know that snoozing and napping might not be appropriate at this time." In response, the trial court reminded the jurors of the importance of staying awake and instituted a "buddy system" between jurors to have them help each other stay awake. Later in the trial, Armstrong's counsel revisited the issue and asked that the juror in question be replaced with an alternate. The State objected on the basis that there was no evidence that the juror had been sleeping. The trial court denied the request, but moved the juror in question closer to the bailiff. "As counsel made no contemporaneous request for the trial court to conduct an inquiry [or for a mistrial] . . . we find this issue has been waived." (Citations omitted.) *Mathis v. State*, __ Ga. __ (2) (Case No. S13A1036, decided on October 21, 2013).

However, even assuming this issue is properly before this Court, we find no error. OCGA § 15-12-172 vests a trial court with the discretion to replace a juror with an alternate at any time, whether before or after final submission of the case to the jury, so long as the trial court has a sound legal basis to do so. This Court "will not interfere with a trial court's decision regarding removal of a juror from a panel absent an abuse of that court's discretion." (Citation omitted.) *Mathis*, supra. Upon observing a juror who appears to have fallen asleep during trial, counsel has a duty to bring the matter to the trial court's attention and the trial court has a duty to

11

awaken the juror. *Foster v. State*, 255 Ga. 425, 425 (2) (339 SE2d 256) (1986). In the present case, the trial court took prompt action when the sleeping juror was brought to its attention by reminding the jurors of the importance of remaining awake and instructing them to assist each other in staying awake.

Armstrong argues that in addition to the trial court's actions, it was required to determine whether the juror had, in fact, been sleeping or was incapacitated. We disagree. "Given that the only juror irregularity alleged in this case consisted of a relatively brief, single act of dozing, we find no abuse of discretion on the part of the trial court in concluding that its immediate remedial actions were sufficient." (Citations omitted.) *Mathis*, supra.

6. Armstrong contends that the trial court erred in failing to provide the following jury charge regarding multiple defendants to the jury: "Though you may consider all of the evidence as a whole, conviction of one defendant does not necessarily require conviction of another (or all). You, the jury, must determine the guilt or innocence of each defendant separately." This enumeration is without merit, however, because the trial court did, in fact, instruct the jury with that charge.

7. In a compound enumeration of error, Armstrong contends for the first time on appeal that his conviction should be reversed because he was not tried within two

12

terms of court following the filing of his demand for speedy trial, or in the alternative, he argues that this Court should remand the case to the trial court for consideration of an ineffective assistance of counsel claim against his trial counsel for failing to take appropriate action before trial and against his appellate counsel for failing to address his trial counsel's deficiencies regarding this issue at the hearing on the motion for new trial.[3]

(a) We find that Armstrong has waived appellate consideration of the issue that he was not tried within two terms of court despite his demand for a speedy trial because he did not raise the issue before the trial court prior to trial or during his motion for new trial. See *Weeks v. State*, 316 Ga. App. 448, 450 (1) (729 SE2d 570) (2012) (where defendant fails to raise an issue before the trial court or during his motion for new trial, he has waived the issue for consideration on appeal).

Even if Armstrong had not waived his right to raise the issue on appeal by failing to raise it before the trial court, we find that his trial counsel waived his demand for a speedy trial. The State filed a supplemental brief with this Court on October 17, 2013, arguing that a supplemental record filed with this Court on March

---

[3] Armstrong also filed a separate motion to remand the case to the trial court for consideration of evidence regarding his ineffective assistance claims. Based upon our analysis in this Division, that motion is denied.

22, 2013, showed that Armstrong's trial counsel withdrew his demand for a speedy trial in open court on September 8, 2009. In his response brief, Armstrong contends that trial counsel's waiver of his speedy trial demand was not valid because the transcript did not indicate that Armstrong was present in court at the time his counsel withdrew his demand for speedy trial. However, this Court has held that "[a]lthough the record is unclear as to whether [Armstrong] was present when his attorney made [the] announcement [that she was withdrawing a demand for speedy trial], we know of no requirement that the client be present for the voluntary act by his counsel that results in such a waiver." *Twiggs v. State*, 315 Ga. App. 191, 200 (3) (726 SE2d 680) (2012). See also *Burdett v. State*, 285 Ga. App. 571, 573 (2) (646 SE2d 748) (2007) (finding that defendant's demand for a speedy trial was properly withdrawn when his counsel filed a motion to withdraw his demand for speedy trial, despite defendant's arguments that he did not know about his counsel's motion nor did he consent to it).

(b) Armstrong maintains in his appellate brief that his trial counsel rendered ineffective assistance for failing to take appropriate action to pursue his demand for speedy trial claim. However, this contention of ineffectiveness was not raised in Armstrong's motions for a new trial or at the motion hearing; thus, it is waived. *Marshall v. State*, __ Ga. App. __ (1) (a) (Case No. A13A1373, decided on October

14

25, 2013). See generally *Glover v. State*, 266 Ga. 183, 184 (2) (465 SE2d 659) (1996) (explaining that an ineffectiveness claim must be raised "at the earliest practicable moment" and that a claim must be raised *before appeal* if the opportunity to do so is available; that the ability to raise the issue on motion for new trial represents such an opportunity; and that the failure to seize that opportunity is a procedural bar to raising the issue at a later time).

(c) Armstrong maintains, in the same compound enumeration of error, that his first appellate counsel rendered ineffective assistance for failing to seek acquittal for the State's failure to comply with his demand for speedy trial during the motion for new trial hearing. Pretermitting whether his claim against his first appellate counsel is barred, see *Wilson v. State*, 286 Ga. 141, 144 (4) (686 SE2d 104) (2009) (holding that a defendant cannot resuscitate procedurally barred claims of ineffective assistance of trial counsel simply by bootstrapping them to a claim of ineffectiveness of appellate counsel), we find this claim to be without merit.

"Assuming that [Armstrong's] claim of ineffective first appellate counsel is properly raised because it is premised on a claim not procedurally barred, a remand to the trial court for an evidentiary hearing would be necessary unless we can determine from the record that the two-prong test for ineffectiveness cannot be met."

(Citation and punctuation omitted.) *Lewis v. State*, 291 Ga. 273, 282 (7) (731 SE2d 51) (2012). Under the two-prong test, Armstrong must show that his first appellate counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Lewis*, 281 (7). Here, Armstrong can show no prejudice to his defense arising from his first appellate counsel's failure to question his trial counsel as to why she did not seek acquittal based upon the State's failure to comply with a demand for speedy trial that had been waived.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*