**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 23, 2024**

# In the Court of Appeals of Georgia

A24A0998. RICHARDSON v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Darievq Javon Richardson was convicted of hijacking a motor vehicle,[1] attempted armed robbery,[2] and reckless conduct[3] as a lesser included offense of aggravated assault.[4] The trial court denied Richardson's second amended motion for new trial, and he appeals, arguing that (1) the evidence was insufficient to

---

[1] See OCGA § 16-5-44.1 (b).

[2] See OCGA §§ 16-4-1, 16-8-40 (a) (2).

[3] See OCGA § 16-5-60 (b). The jury acquitted Richardson of second degree criminal damage.

[4] Previously, the State appealed the trial court's order granting in part and denying in part Richardson's motion to suppress. This Court reversed in part and vacated in part the trial court's order in *State v. Richardson*, 353 Ga. App. 368 (837 SE2d 524) (2020).

support the verdicts of hijacking a motor vehicle and attempted armed robbery; and the trial court erred by (2) failing to give a jury charge for reckless conduct as a lesser included offense in hijacking a motor vehicle and attempted armed robbery; (3) by conducting a bench conference outside Richardson's presence and by sentencing him via teleconference; and (4) by failing to inquire into instructions potentially missed by a sleeping juror, regarding which error Richardson also claims ineffective assistance of counsel. For the reasons that follow, we affirm.

Viewed in favor of the verdict,[5] the record shows that at around 10:00 p.m. on the evening of January 22, 2018, a deputy responded to a "hang-up" 911 call, which the deputy later discovered was related to a domestic dispute call at the apartment where 18-year-old Richardson lived with his mother and younger sister. The mother described her son to police as wearing a black hoodie and dark pants, and the sister had called 911 because of the argument between them. The deputy left to patrol the complex to attempt to find him.

While it was still dark at approximately 5:00 a.m., the same deputy responded to the same apartment complex following a 911 call reporting an attempted car

---

[5] See *Castro-Moran v. State*, 356 Ga. App. 248 (845 SE2d 708) (2020). See also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

hijacking and armed robbery. The victim told police that he had left his 2007 Nissan Altima running to warm up in the winter weather before returning to the car, at which time he saw a young man standing at the top of the stairwell in the breezeway. As the victim approached his car, the 17 to 19-year-old man, who was wearing a black do-rag, black hoodie with white spots on the right rear shoulder, dark pants or jeans, and holding a handgun,[6] came up behind him and demanded his car keys and wallet.

The victim did not believe the assailant to be in a violent state (he described him as having a shaky voice, unsteady hands, and apparent lack of experience with a firearm), so he swiped at the weapon before running away to avoid a "fear bullet." The report from the incident stated that the victim threw down his wallet before running, but during his testimony, the victim denied doing so intentionally; he maintained possession of his car key during the incident. The assailant stopped chasing the victim, who eventually encountered the first officer to arrive, and the victim lost no valuables from his wallet.

The two deputies accompanied the victim back to his car, which was still parked in the same location within view of Richardson's apartment. The car's engine was still

---

[6] This was later determined to be a BB gun or air-powered pellet gun.

running, but its windshield was shattered, and a fire extinguisher was stuck under the front of the car. While investigating, officers saw blinds moving in the front window of Richardson's apartment, prompting the officers to approach. When the officers knocked on the door, Richardson's mother answered, and they asked her whether Richardson was there. Before Richardson came to the door, the officers unholstered their weapons based on the victim's statement that the assailant had a weapon, and Richardson exited the apartment with his hands raised in response, stating that he was not armed.

After Richardson was out of the apartment with the officers, the victim identified him as the individual who had assailed him earlier. The officers arrested Richardson, who did not have a weapon on him at that time, but the mother allowed officers to enter the apartment, and they discovered a BB gun that was near the blinds through which officers believed Richardson had watched during their investigation earlier that morning. Richardson also admitted to the officers that he "had done something stupid," that he had the BB gun, and that he had tried to take the victim's car.

At the close of evidence, the jury returned guilty verdicts as to attempted hijacking of a motor vehicle, attempted armed robbery, and reckless conduct. After the trial court denied his amended motion for new trial, Richardson appealed.

1. Richardson first argues that the evidence was insufficient to support the verdicts of attempted hijacking a motor vehicle and attempted armed robbery.

When reviewing the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[7]

---

[7] (Citation omitted; emphasis in original.) *Jackson*, 443 U. S. at 319 (III) (B).

Richardson argues that because the jury acquitted him of aggravated assault[8] for brandishing a deadly weapon at the victim and convicted him instead of reckless conduct,[9] there was insufficient evidence of intent to support the guilty verdicts for attempted hijacking a motor vehicle[10] and attempted armed robbery,[11] both of which

[8] "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" OCGA § 16-5-21 (a) (2). "A person commits the offense of simple assault when he or she either: (1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a).

[9] OCGA § 16-5-60 (b) states that "[a] person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his or her act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor."

[10] Hijacking a motor vehicle occurs "when [a] person while in possession of a firearm or weapon obtains a motor vehicle from an individual or the presence of another individual by force and violence or intimidation or attempts or conspires to do so." OCGA § 16-5-44.1 (b). Weapon is defined to include a replica weapon. See OCGA § 16-5-44.1 (a) (3).

[11] Armed robbery is defined as "when, with intent to commit theft, [a person] takes property of another from the person or the immediate presence of another . . . [b]y intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another[.]" OCGA § 16-8-40 (a) (2).

charges he argues were predicated on the same act of brandishing the BB gun as the act of aggravated assault.

> As a general rule, a guilty verdict cannot be challenged on the ground that the jury's verdict of guilt on one count of an indictment is inconsistent with an acquittal on another count. Such verdicts are deemed constitutionally tolerable because they may reflect an exercise of lenity by the jury that is not necessarily grounded in its view of the evidence.[12]

Moreover, in *State v. Springer*,[13] the Supreme Court of Georgia overturned prior precedent and held that "multiple guilty verdicts for the same conduct that are based on varying levels of mens rea are not mutually exclusive," and therefore, do not require reversal of such jury verdicts.[14] For the same reason then, the jury's guilty verdict as to reckless conduct in this case does not show that evidence was, as a matter of law, insufficient to support the jury's finding of guilt for the other two charges.

---

[12] (Citation omitted.) *State v. Springer*, 297 Ga. 376, 377 (1) (774 SE2d 106) (2015).

[13] Id.

[14] Id. at 382 (1).

The evidence as stated above supports the verdict because the statute includes attempt in its definition, and the jury could find that Richardson's act of demanding the victim's keys and wallet, even if the victim ultimately failed to do so, constituted an attempt to obtain the motor vehicle and attempt to rob him of his wallet.[15] The jury could have determined that Richardson intentionally brandished the BB gun, but that the evidence failed to support a finding that he attempted to commit a violent injury or place the victim "in reasonable apprehension of immediately receiving a violent injury"[16] to support a guilty verdict of aggravated assault. In any event, this enumeration is without merit, and the trial court did not err by denying his motion for new trial as to this issue.

2. Richardson also argues that the trial court erred by failing to give a jury charge of reckless conduct as a lesser included offense for attempted hijacking of a motor vehicle and attempted armed robbery. As an initial matter, Richardson cites no

---

[15] See, e.g., *Wilson v. State*, 344 Ga. App. 285, 287-288 (1) (810 SE2d 303) (2018) (evidence was sufficient to support charge of attempted armed robbery); *Campbell v. State*, 314 Ga. App. 299, 301 (724 SE2d 24) (2012) (attempted hijacking). See also OCGA § 16-4-1 (defining criminal attempt).

[16] OCGA § 16-5-20 (a).

cases in which reckless conduct has been given as a lesser included offense for either of these crimes.[17]

> [I]n order to authorize a jury instruction on a lesser included offense, there must be some evidence in the record that the defendant committed that offense. But where the evidence shows either the commission of the completed offense as charged, or the commission of no offense, the trial court is not required to charge the jury on a lesser included offense.[18]

"We review a trial court's refusal to give a requested jury charge only for an abuse of discretion."[19]

Richardson filed requests to charge, which he later amended to request that the trial court charge disorderly conduct or reckless conduct as lesser included offenses for all the counts against him. The trial court, however, charged the jury with the requested lesser included offense of reckless conduct only with regard to aggravated assault. Although the trial court's decision not to give an instruction for reckless

---

[17] OCGA § 16-8-41 (a) states that "[t]he offense of robbery by intimidation shall be a lesser included offense in the offense of armed robbery."

[18] (Citations and punctuation omitted.) *Stepp-McCommons v. State*, 309 Ga. 400, 403 (2) (845 SE2d 643) (2020).

[19] (Punctuation omitted.) *Castro-Moran*, 356 Ga. App. at 250 (1) (a).

conduct as a lesser included offense of either attempted hijacking or attempted armed robbery arguably resulted in some inconsistency among the verdicts, we cannot say that the failure to so charge was an abuse of discretion. The evidence shows that Robinson either completed the crimes of attempted hijacking and attempted armed robbery, or he completed neither of those crimes.[20] If the jury believed that Richardson did not intend to attempt take the victim's car or wallet, then it would have acquitted him of those charges. Accordingly, this enumeration is without merit.

3. Richardson asserts that the trial court erred by failing to inquire into a sleeping juror. Richardson also raises a related claim of ineffective assistance of counsel for counsel's failure to request remedies from the court regarding the juror.

(a) *Trial court error.* After the close of evidence and during the trial court's charge to the jury, the State brought to the court's attention that one of the jurors appeared to be sleeping.[21] The trial court admonished the panel to remain alert during the remainder of the proceedings, and it provided the jurors with a written copy of the charges during deliberation. Richardson, however, argues that the trial court should

---

[20] See, e.g., *Stepp-McCommons* 309 Ga. at 403-409 (2).

[21] Apparently, the jurors were dispersed throughout the courtroom based on the public health protocols at the time.

have taken more steps to determine what the juror may have missed from the charge and whether the juror understood the law being charged.

In the context of a juror alleged to have been sleeping during court proceedings, "this [C]ourt will not interfere with a trial court's decision regarding removal of a juror from a panel absent an abuse of that court's discretion."[22]

Pretermitting whether Richardson's enumeration of error was preserved for appeal,[23] the record evinces no abuse of discretion on the part of the trial court in its action regarding the alleged sleeping juror.[24] As noted above, in addition to stopping its instructions to admonish the panel to remain alert and attentive, the trial court sent a written copy of the jury charges with the jury for deliberation. Accordingly, this enumeration is without merit.[25]

(b) *Ineffective Assistance of Counsel*. Richardson's trial counsel did not request further action from the trial court regarding the alleged sleeping juror, and in his

---

[22] *Mathis v. State*, 293 Ga. 837, 839 (2) (750 SE2d 308) (2013).

[23] See id. at 838 (2) (explaining that because "counsel made no contemporaneous request for the trial court to [take certain action regarding an alleged sleeping] juror, we find this issue has been waived").

[24] See id. at 839 (2).

[25] See id.

motion for new trial and now on appeal, Richardson contends that this failure constituted ineffective assistance of counsel. The trial court determined that Richardson failed to establish prejudice to support this argument even if trial counsel's failure could be considered deficient performance.

> In order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that counsel performed deficiently and that the deficient performance prejudiced the defendant such that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. Upon appellate review of that claim, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[26]

At the motion for new trial hearing, trial counsel conceded that he did not think about requesting the trial court to determine if the juror had missed portions of the charge, but he "probably" should have requested the trial court to inquire into what the juror may have missed. Trial counsel did not really think about the matter at the time because he did not believe the juror had been sleeping for very long, but there was

---

[26] (Punctuation omitted.) *Styles v. State*, 329 Ga. App. 143, 151 (3) (764 SE2d 166) (2014), quoting *Colzie v. State*, 289 Ga. 120, 124 (3) (710 SE2d 115) (2011). See also *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

no other strategic reason for failing to inquire further. Trial counsel testified that he believed the trial court acted sufficiently because he was trying to be understanding and considerate of the jurors, who had to follow pandemic protocol.

Based on the record as stated in Division 3 (a) and based on the testimony at the motion for new trial, the trial court's decision to deny the motion for new trial as to this claim of ineffective assistance of counsel was not erroneous. Richardson presented no evidence in the form of testimony from the juror that the individual was not aware of the instructions, and because the written instructions were sent out for deliberation, we discern no error in the trial court's conclusion that Richardson has not established prejudice in this instance.[27]

4. Finally, Richardson contends that the trial court erred by conducting a bench conference outside his presence and by sentencing him via video conference.

"Embodied in the constitutional right to the courts under [the United States Constitution and] Art. I, Sec. I, Par. XII of the Georgia Constitution of 1983 is the

---

[27] See, e.g., *Mathis*, 293 Ga. at 840 (3) (resolving the issue of ineffective assistance of counsel for failure of trial counsel to further inquire into a sleeping juror on the basis that the defendant had failed to establish deficient performance); *Lawson v. State*, 280 Ga. App. 870, 874 (2) (f) (635 SE2d 259) (2006) ("rank speculation . . . is insufficient to establish an ineffective assistance claim") (citation omitted).

right of the criminal defendant to be present at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure."[28]

(a) *Bench Conference.* When the State noticed that a juror may have been sleeping during instructions, a bench conference was held. Richardson argues that he was not present at this conference, and this was a violation of his right to be present at any stage of the court proceeding. To the extent that the incident could even be considered a bench conference, it was vanishingly brief, and there was no discussion — simply information given to the judge by one of the attorneys and the judge's acknowledgment of that information. The judge then admonished the jury to stay alert and pay attention, and it provided a written copy of the full instructions to them during deliberation.

---

[28] (Punctuation omitted.) *Smith v. State*, 319 Ga. App. 590, 596 (6) (737 SE2d 700) (2013), quoting *Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001). See also *United States v. Gagnon*, 470 U. S. 522, 526 (105 SCt 1482, 84 LE2d 486) (1985) ("The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him.") (citation omitted).

The Georgia Supreme Court has held that a conference of limited scope involving only the trial court and counsel is not a critical stage of the proceedings. No juror was present at the bench conference. Moreover, [Richardson] could not have made a meaningful contribution to the bench conference. There was simply no error in proceeding with the limited inquiry outside the presence of the defendant.[29]

(b) *Sentencing.* Robinson also argues that his right to be present during his sentencing was violated because he was not physically present and appeared only via video conference. At the beginning of the October 13, 2021 sentencing hearing, the trial court asked Robinson if he was aware that sentencing would occur remotely and not in person, to which Robinson responded that he had not known that prior to the hearing, and the court explained that he had access to his attorney during the proceeding and provided him with the opportunity to speak privately with the attorney, which opportunity Robinson declined. At the hearing on the amended

---

[29] (Citations and punctuation omitted.) *Bennett v. State*, 279 Ga. App. 371, 375 (4) (631 SE2d 402) (2006). See also *Smith*, 319 Ga. App. at 596 (6) (explaining that there was "no evidence in the record suggesting that [the defendant's] presence at the bench during either housekeeping or legal discussions was necessary to defend against the charges, that his presence would have been useful to the resolution of any matter before the court, or that his absence from the sidebar conferences in any way affected the fairness of the trial procedure or caused [the defendant] to lose or waive any right or defense.").

motion for new trial, counsel testified that he was unaware that Robinson would not be in the courtroom physically, and for this reason, he had not discussed sentencing via video conference with Robinson prior to the hearing. In its order denying his motion for new trial as to this issue, the trial court determined that Robinson waived his right to be physically present at the sentencing hearing by failing to object at that time.

"Sentencing is a critical stage at which a defendant is generally entitled to be present under the Georgia Constitution."[30] That said,

the right to be present belongs to the defendant, and he is free to relinquish it if he so chooses. A defendant may relinquish his right in several ways: if he personally waives the right in court; if his counsel waives the right at his express direction; if his counsel waives the right in open court while he is present; or, as seen most commonly in our case law, if his counsel waives the right and the defendant subsequently acquiesces to that waiver. . . . Acquiescence may occur when a defendant remains silent after he becomes aware of the proceedings occurring in his absence, so long as he had sufficient information concerning the matters occurring outside his presence for his silence to be fairly construed as

---

[30] (Punctuation omitted.) *Bettis v. State*, 357 Ga. App. 587, 593 (3) (851 SE2d 158) (2020) (vacating sentence and remanding for resentencing because the defendant had waived presence at sentencing during argument but requested to be present for the pronouncement of the sentence itself, which the trial court failed to do).

16

consent. The determination of whether a defendant acquiesced to the violation of his right to be present is often highly fact-specific. And the trial court's findings of fact on the issue will be upheld on appeal unless clearly erroneous. [31]

Assuming without deciding that a video conference does not constitute presence for these purposes,[32] we cannot say that the trial court clearly erred by finding that the defendant acquiesced to appearing at the sentencing hearing via video conference. Although neither Robinson nor his attorney was aware beforehand that Robinson would not appear in person, Robinson could see and hear the proceedings, he had access to his attorney (although he chose not to exercise it), and he did not object to the method of the proceeding when discussing it with the trial court. Based on this record, which includes the motion for new trial hearing at which Robinson

---

[31] (Citations and punctuation omitted.) *Champ v. State*, 310 Ga. 832, 841 (2) (c) (854 SE2d 706) (2021).

[32] Neither party cites Georgia criminal case law directly addressing this issue, but we need not reach that question.

declined to testify and the sentencing hearing at which he failed to object, we cannot say that the trial court's determination was clearly erroneous.[33]

*Judgment affirmed. Hodges and Watkins, JJ., concur.*

---

[33] Compare id. at 844-848 (2) (c) (remanding for further proceedings in order to develop facts concerning the issue).