S13A0977. THOMAS v. THE STATE.
(750 SE2d 297)

BLACKWELL, Justice.

James Thomas was tried by a Fulton County jury and convicted of the murder of Shamar Edwards, as well as aggravated assaults upon Patrick Edwards, Donald Jumper, Amber McAdory, and Quintisha Page. Thomas appeals, contending that the trial court erred when it failed to sever his trial from that of his co-defendants, when it admitted certain evidence, when it allowed the prosecuting attorney to ask leading questions of certain witnesses, and when it refused to charge the jury on voluntary manslaughter. We see no error and affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that Thomas, Kareem Allen, Raymond Brown, and Adrian Lamar went to a party at a home that was two doors down from the

---

[1] The crimes were committed on July 25, 2004. Thomas and his co-defendants – Kareem Allen, Raymond Brown, and Adrian Lamar – were indicted on December 14, 2004, and each was charged with malice murder, felony murder, seven counts of aggravated assault, possession of a firearm during the commission of a felony, carrying a pistol without a license, unlawful carrying of a concealed weapon, and possession of marijuana. Thomas and Brown also were charged with unlawfully influencing a witness. The marijuana charge was dismissed by nolle prosequi, and trial commenced on September 11, 2006. After the State presented its evidence, the trial court directed a verdict of acquittal as to influencing a witness and one count of aggravated assault. The remaining counts went to the jury, which returned its verdict on October 2, 2006, finding Thomas guilty of all charges, except for one count of aggravated assault. On January 31, 2007, Thomas was sentenced to imprisonment for life for malice murder, imprisonment for a consecutive term of five years for aggravated assault upon Jumper, imprisonment for concurrent terms of five years each for possession of a firearm during the commission of a felony and aggravated assaults upon McAdory, Page, and Patrick Edwards, and imprisonment for concurrent terms of twelve months each for carrying a pistol without a license and unlawfully carrying a concealed weapon. The verdict as to felony murder was vacated by operation of law, *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the aggravated assault upon Shamar Edwards merged with the malice murder. Thomas timely filed a motion for new trial on February 5, 2007, and he amended it on July 6, 2010. The trial court denied his motion on January 11, 2012. Thomas timely filed a notice of appeal on January 20, 2012, and the case was docketed in this Court for the April 2013 term and submitted for decision on the briefs.

house in which Allen lived.[2] After Allen argued with some other partygoers, Thomas brandished a .45 caliber handgun and offered to "straighten [out]" the dispute in the front yard. Thomas, Allen, Brown, and Lamar were asked to leave the party, and they did so, but as they left, they were overheard saying that they would be back. Allen added that he would "shoot the . . . party up."

Later, multiple gunshots were fired at other partygoers as they left the party, including Shamar Edwards, who was struck and killed. These shots were fired from a location in the front of the house in which Allen lived, where Thomas and his friends were seen with one or more handguns. One witness identified Thomas as the shooter, and another said that she saw Thomas holding a handgun just after the shooting. Moreover, the shots were fired from a .45 caliber handgun, and Thomas gave such a handgun to a friend for safekeeping after the shooting. Thomas, Allen, Brown, and Lamar were charged and tried together for the murder and other crimes related to the shooting.[3]

We previously considered the evidence in this case when we heard an appeal by Allen, whose convictions were affirmed. See *Allen v. State*, 288 Ga. 263 (702 SE2d 869) (2010). We now consider this evidence anew with respect to Thomas, although he does not dispute that it is sufficient to sustain his convictions. Upon our review of the record, we conclude that he is right not to dispute it. The evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Thomas was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Allen*, 288 Ga. at 264 (1).

2. Thomas claims that the trial court erred when it denied his motion to sever his trial from that of his co-defendants. We previously considered and rejected such a claim of error with respect to Allen, see *Allen*, 288 Ga. at 265-266 (2), and we reject it with respect to Thomas for many of the same reasons. When several defendants are indicted together for a capital crime, but the State does not seek the death penalty, whether the defendants are to be tried together or separately is a matter committed to the sound discretion of the trial court. OCGA § 17-8-4 (a). In such a case, "[t]he burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must

---

[2] The party was hosted by a girl who once had gone to school with Thomas, and it was attended by dozens of teenagers and at least a few young adults.

[3] Allen and Lamar were convicted of the same crimes as Thomas, see note 1, supra, except that Allen was acquitted of the weapons charges. Brown was acquitted of all charges.

make a clear showing [that a joint trial would lead to] prejudice and a consequent denial of due process." *Character v. State*, 285 Ga. 112, 118 (5) (674 SE2d 280) (2009) (punctuation and footnote omitted). In this case, we conclude that Thomas has made no "clear showing of prejudice and a consequent denial of due process."

Thomas argues that he was prejudiced by a joint trial because he and a co-defendant are similar in appearance, and for that reason, a joint trial posed a substantial risk of confusion. But several of the witnesses had known Thomas and each of his co-defendants for years, and others were able to identify Thomas by his distinctive clothing. One witness did seem to confuse Thomas and Brown briefly, but she did so only with respect to one particular of her testimony, and she later clarified her testimony on that point.[4] Moreover, that witness implicated Allen and Lamar in the shooting, but not Thomas or Brown, so any confusion on her part could not possibly have harmed Thomas. We find no other meaningful indication of confusion in the record. Because any confusion at trial was limited to one particular of the testimony of one witness, because that same witness cleared up the confusion, and because the confusion could not have harmed Thomas, any confusion at the joint trial did not amount to a denial of due process. See *Allen*, 288 Ga. at 265 (2).

Thomas also argues that he was prejudiced by the admission of evidence that was properly admissible only against Brown. In support of this argument, Thomas points to testimony by several witnesses that Brown had made statements in which he suggested that he — Brown, that is — had been involved in the shooting. But even if that testimony were not admissible against Thomas,[5] we are not convinced that he was prejudiced by its admission. The jury, after all, acquitted Brown of all charges, and there is no indication that the jury relied upon testimony about his incriminating statements when it returned its verdict as to Thomas. See *Allen*, 288 Ga. at 265 (2).

Finally, Thomas argues that he and his co-defendants presented antagonistic defenses. That argument, however, is belied by the record, which shows that Thomas and his co-defendants urged defenses that were, for the most part, consistent, including, for instance, that prosecution witnesses were not credible, that the area from which the

---

[4] This witness initially referred to Brown as "J.T.," a nickname by which Thomas sometimes was known. But the witness later clarified that she had been given the name by another person, and she confirmed that the person she believed to be "J.T." was, in fact, Brown.

[5] The assumption might not be warranted. After all, we found in *Allen* that the statements attributed to Brown "were made during the pendency of [a] conspiracy and were admissible . . . under the co-conspirator exception to the hearsay rule." 288 Ga. at 266-267 (4) (citations omitted).

shots were fired was too dark and distant for accurate identification of the shooter, and that the police investigation was beset with problems. Even to the extent that they urged antagonistic defenses, Thomas has failed to show that the joint trial denied him due process. See *Callendar v. State*, 275 Ga. 115, 116 (2) (561 SE2d 113) (2002) ("The mere fact that [a co-defendant] tried to pin the blame on Callendar was not sufficient in itself to show a denial of due process."). See also *Allen*, 288 Ga. at 266 (2) ("[B]ecause appellant has not shown any prejudice to his case [that] might have been avoided by severing the trial, we find no abuse of discretion in the trial court's denial of appellant's motion for severance." (Citation and punctuation omitted)).

3. Thomas also contends that the trial court erred when it permitted the prosecuting attorney to lead certain prosecution witnesses, and he points to a number of leading questions put to those witnesses. But Thomas did not raise a timely objection to most of the questions, and he has waived his claim of error to the extent that he did not timely object at trial. See *Johnson v. State*, 292 Ga. 785, 787-788 (3) (741 SE2d 627) (2013) ("[When defendant] did not object at the time of the complained-of . . . examination, he has waived appellate review of this issue." (Citation omitted)). And as to one of the questions about which Thomas complains, he timely objected to it as leading, the trial court sustained his objection, and he did not ask for any further relief. With respect to that question, there is nothing for us to review. See *Fairclough v. State*, 276 Ga. 602, 604 (3) (581 SE2d 3) (2003) ("A successful objection . . . cannot be the basis for reversal unless accompanied by a contemporaneous denial of a motion for mistrial or a denied request to strike, to give curative instructions, or to rebuke counsel." (Citations omitted)). Finally, even as to the questions to which Thomas timely objected but his objections were overruled, we cannot say that the trial court abused its considerable discretion to allow leading questions.[6] See *Fugate v. State*, 263 Ga. 260, 265 (10) (431 SE2d 104) (1993) ("[T]he trial court has the discretion to allow leading questions on direct examination, where, for example, the witness is nervous, or ignorant, or hostile. It would be a rare case in which the trial court's exercise of discretion on this issue would warrant reversal." (Citation omitted)).

4. Thomas contends that the trial court erred when it admitted, as he describes it, prejudicial character evidence. In particular,

---

[6] These questions were directed to a witness who attended the party and was asked if she "recognize[d] [a] diagram as a smaller version of a section of [the area in which the murder took place]," and to a witness who initially had told police that Thomas had given him a gun after the shooting, but who testified at trial that, in fact, Thomas never had given him a gun.

Thomas complains that, after a witness denied that Thomas had given him a gun following the shooting, the trial court admitted a recording of a prior inconsistent statement given by that witness to police. Thomas says that this recording — on which the witness says not only that Thomas had given him a gun following the shooting, but also that he had seen Thomas with a handgun a few weeks before the shooting — impugned his character. We disagree. In the first place, the right to bear arms is a constitutional right of American citizens, and we do not understand how evidence of the *lawful* carrying of a firearm could ever amount to a showing of bad character. To the extent that the recording suggested that Thomas was *unlawfully* carrying a handgun a few weeks before the shooting, it nevertheless was relevant to a disputed issue at trial — whether Thomas did, in fact, carry, brandish, and fire a handgun at the time of the party — inasmuch as it tended to show that he had access to such a gun. As we have explained before, "[i]f evidence is relevant and material to an issue in the case, it is not inadmissible solely because it incidentally places a defendant's character in issue." *Saylors v. State*, 251 Ga. 735, 738 (7) (309 SE2d 796) (1983) (citation omitted). We see no abuse of discretion in the admission of the recording of the prior inconsistent statement.

5. Thomas also contends that the trial court should have declared a mistrial after the same witness attempted to explain his prior inconsistent statement. This witness said that he told police that Thomas had given him a gun following the shooting only because an investigator said that "[Thomas] was in the other room and already confessed and told him that I had the [gun]." But it was undisputed that Thomas had *not*, in fact, confessed, and it was perfectly clear that the statement that the witness attributed to the investigator was only an interrogation technique. Moreover, this testimony was beneficial to Thomas, insofar as it offered an explanation of a prior inconsistent statement that tended to incriminate him. In fact, his lawyer made use of that explanation in his closing argument. Consequently, we cannot say that the trial court abused its discretion when it denied Thomas's motion for a mistrial. See *Agee v. State*, 279 Ga. 774, 777 (4) (621 SE2d 434) (2005).

6. Finally, Thomas contends that the trial court should have charged the jury on voluntary manslaughter. But we already considered and rejected that claim in *Allen*, 288 Ga. at 268 (7), and it is equally unavailing to Thomas. As we explained, it is undisputed that Shamar Edwards was neither provocative nor belligerent toward Thomas and his friends, and it is undisputed that he "was shot from a considerable distance as he was peacefully leaving the party." Id.

"Because there was not even slight evidence of the passion or provocation needed to authorize a charge on voluntary manslaughter, the trial court did not err by refusing to give [Thomas's] requested charge." Id. (citation omitted).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 21, 2013.

*Jones, Morrison & Womack, Wallace C. Clayton II,* for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Marc A. Mallon, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine T. Parvis, Assistant Attorney General,* for appellee.