297 Ga. 89
FINAL COPY

S15A0341. LAMAR v. THE STATE.

MELTON, Justice.

Following a jury trial, Kevin Deshawn Lamar was found guilty of murder, felony murder, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon with regard to the murder of Rickey McCrae. Lamar was also found guilty of the aggravated assault of Marc Williams.[1] Lamar appeals, contending among other

---

[1] On July 7, 2009, with regard to the death of McCrae, Lamar was indicted for malice murder, two counts of felony murder, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. With regard to the confrontation with Williams, Lamar was indicted for aggravated assault and possession of a firearm by a convicted felon. After a jury trial on November 16-20, 2009, Lamar was found guilty of all charges. For the murder of McCrae, Lamar was sentenced to life imprisonment and five consecutive years for the possession of a firearm during the commission of a felony. The felony murder charges were vacated by operation of law. Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). Lamar was also sentenced to twenty additional consecutive years for the aggravated assault of Williams and five consecutive years for the possession of a firearm by a convicted felon. The remaining charges merged for purposes of sentencing. Lamar filed a motion for new trial on November 23, 2009, and, after retaining new counsel, filed an amended motion on November 21, 2013. The motion was denied on March 21, 2014. Lamar filed a timely notice of appeal, and his case was docketed to the January 2015 term of this Court for decision on the briefs.

things, that the evidence was insufficient to support the verdict and that he received ineffective assistance of counsel. For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, on the evening of March 17, 2009, a man wearing a cap, athletic jacket, and backpack approached McCrae while he was attending a barbeque cookout. The approaching man pulled out a handgun, fatally shot McCrae, and fled the scene. Approximately a week after the shooting, Brandon Snow informed police that he was at a small apartment complex a short walking distance from the scene of the crime on the night of McCrae's murder. Snow recounted that Lamar, wearing a backpack, ran up to him and exclaimed that he had just done "some real hot sh-t" and needed a ride out of the area. Testimony at Lamar's trial indicated that "doing some real hot sh-t" is a euphemism for shooting someone. In addition, Antwan Davis informed police that he had been with Lamar immediately before the shooting, and Lamar told him that he "had to go do something and he didn't know how it was going to turn out."

A few days after the shooting, Lamar and Williams got into an altercation when Williams went to pick up one of his children at Lamar's apartment, where

2

Lamar lived with Davis and others. In the middle of the argument, which occurred on Lamar's doorstep, Lamar went inside for a moment and returned with a handgun. Williams testified that he felt threatened by the handgun, and Davis stated that Lamar waved the gun around. Williams left the apartment momentarily, but returned with police. Lamar opened the door with the gun in his hand, but, before he was detained and arrested by the police, he apparently threw the handgun into a trash can. Davis informed police that Lamar routinely carried this handgun. Davis also told police that Lamar normally wears a backpack wherever he goes. The gun that Lamar was holding during his confrontation with Williams was subjected to ballistic testing and determined to be the weapon that was used to kill McCrae.

This evidence was sufficient to enable the jury to find Lamar guilty of the crimes for which he was charged beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Nonetheless, Lamar maintains that Broderick Stallings actually killed McCrae. Lamar argues that Stallings had the motive to commit the crime because McCrae had been in an altercation with Stallings's father on the day of the murder. At trial, however, Stallings was thoroughly examined by Lamar, and, though Lamar argued that

3

Stallings was guilty, the jury believed Stallings's alibi testimony rather than Lamar's accusations. As the arbiter of witness credibility, the jury was entitled to make this determination. See Hall v. State, 264 Ga. 85 (1) (441 SE2d 245) (1994).

2. Lamar contends that the trial court erred by admitting evidence of two similar transactions. We disagree.

Under the law applicable at the time of Lamar's trial,[2] evidence of a similar transaction may be admitted if the State shows that

> (1) it seeks to introduce the evidence not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility; (2) there is sufficient evidence to establish that the accused committed the independent offense or act; and (3) there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

(Citation and punctuation omitted.) Matthews v. State, 294 Ga. 50, 52 (3) (751 SE2d 78) (2013). On review, the factual findings of the trial court are accepted unless clearly erroneous, and the decision to admit the similar transaction

---

[2] Because Lamar was tried before January 1, 2013, Georgia's old Evidence Code applies in his appeal. Under the new Evidence Code, admissibility of this category of evidence is governed by OCGA § 24-4-404 (b).

evidence will be affirmed unless there has been an abuse of discretion. Reed v. State, 291 Ga. 10 (3) (727 SE2d 112) (2012).

The two similar transactions in question may be summarized in the following manner. First, on March 13, 1998, Timothy Cauley witnessed Lamar shoot Richard Marsh in the back at an elementary school near Vine City in Fulton County. A bullet also went through a minivan and hit the arm of a mother dropping off her children. Lamar pled guilty to two aggravated assault charges. With regard to the second similar transaction, on January 16, 2009, Anthony Hudson heard someone outside his apartment shooting a weapon. He subsequently called 911 and gave the operator a description of the individual he observed. Officers responded to the scene and found a man who matched the description given. The man told officers that his name was Antwan Davis. Officers later discovered the man was actually Lamar, who was ultimately arrested for providing a false name.

These two transactions were offered for the proper purposes of showing "course of conduct, intent, and lack of mistake," and the trial court did not abuse its discretion by admitting them, despite Lamar's arguments that they were not sufficiently similar to the crimes for which he was on trial. "The proper focus

5

is on the similarities, not the differences, between the crimes charged and the prior acts." (Citation omitted.) <u>Brown v. State</u>, 295 Ga. 804, 816 (8) (764 SE2d 376) (2014). With regard to the 1998 school shooting, Lamar opened fire with a handgun in a public setting. With regard to the 2009 arrest, Lamar was arrested for giving a false name and, once again, investigated for opening fire with a handgun in a public setting. It cannot be said that the trial court abused its discretion by admitting both of these prior offenses as similar transactions. <u>Matthews</u>, supra.

3. Lamar contends that his trial counsel rendered ineffective assistance by failing to object to four comments made by the prosecutor throughout trial. Again, we disagree.

> In order to succeed on his claim of ineffective assistance, [Lamar] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. <u>Strickland v. Washington</u>, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the <u>Strickland</u> test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); <u>Fuller v. State</u>, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" <u>Robinson v. State</u>, 277 Ga. 75, 76 (586 SE2d 313)

(2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

First, Lamar maintains that trial counsel should have objected when the prosecutor asked Stallings on redirect examination whether he wanted to go to jail for a murder he did not commit and how it felt to be falsely accused of a murder he did not commit. Specifically, Lamar contends that the prosecution purposefully bolstered Stallings's credibility by asking these questions. Even if we were to assume that the prosecutor's questions were objectionable on this basis,

> the vouching in this case was only implied and occurred in only [two] question[s] [following an intense cross-examination in which Lamar's counsel asked Stallings about his desire to avoid a return to prison]. The jury was properly instructed that the credibility of the witnesses was for them to determine considering all the facts and circumstances of the case, and that the evidence in the case does not include the opening statements or closing arguments by the attorneys or the questions asked by the attorneys. Given the substantial evidence of [Lamar's] guilt, [including the fact that he stated that he had done "some real hot sh-t" while leaving the scene of the crime and that he was later found with the murder weapon,] we agree with the trial court's conclusion that failure to object to the complained-of question[s] in this case did not undermine the fundamental fairness of the trial [and that Lamar's trial counsel was not ineffective].

Bell v. State, 294 Ga. 443, 446 (2) (754 SE2d 327) (2014).

7

Second, Lamar argues that trial counsel should have objected when the prosecutor asked a detective about his conclusion regarding Stallings during the course of the detective's investigation. The officer responded that, at a certain point in his investigation, he "was confident that Mr. Stallings was not involved in this homicide." Lamar maintains that the investigating officer was thereby allowed to testify regarding the ultimate issue at trial. "Ordinarily, a witness may not express his opinion as to an ultimate fact, because to do so would invade the province of the jury." (Citation omitted.) Fordham v. State, 254 Ga. 59 (4) (325 SE2d 755) (1985). In this instance, the investigating officer testified only regarding the course of his investigation concerning Stallings. He did not testify regarding the ultimate issue in question, namely whether Lamar shot and killed McCrae.

Third, Lamar contends that trial counsel should have objected during closing arguments when the prosecutor stated that, if Stallings had murdered McCrae, the prosecution would not have been able to get Stallings to testify. The permissible range of closing argument, however, is very wide. Conner v. State, 251 Ga. 113 (6) (303 SE2d 266) (1983). "[A] prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial

8

court's discretion; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence, including any that address the credibility of witnesses." (Citation omitted.) <u>Scott v. State</u>, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012). See also <u>Varner v. State</u>, 285 Ga. 300, 301 (2) (c) (676 SE2d 189) (2009) (noting that counsel have " 'wide leeway . . . to argue all reasonable inferences that may be drawn from the evidence during closing argument' " (citations omitted)). Because the prosecutor's argument was proper, trial counsel's decision not to object in this instance was not ineffective assistance.

Fourth and finally, with regard to the aggravated assault of Williams, Lamar argues that trial counsel should have objected during closing arguments, contending, without citation, that the prosecutor misstated the law when she stated that "having a fistfight with somebody is not a forcible felony where you get to pull out a handgun." A review of the transcript, however, shows that Lamar has taken this statement out of context, as the prosecutor went on to point out that, under the facts of this case, there was not even a fistfight prior to the time that Lamar retrieved a gun. Therefore, even if we assumed that the prosecutor's statement, at least in isolation, was improper, Lamar has wholly

failed to show any prejudice from the comment. This is even more so given the fact that the trial court instructed the jury on self-defense, the definition of forcible felonies, and the fact that the arguments of the prosecutor could not be considered as evidence.

Accordingly, the trial court did not err in rejecting Lamar's claims that he received ineffective assistance of counsel.

Judgment affirmed. All the Justices concur.

Decided May 11, 2015.

Murder. Fulton Superior Court. Before Judge Schwall.

S. Cindy Wang, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Arthur C. Walton, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General, for appellee.