In the Supreme Court of Georgia


Decided: May 9, 2016


S16A0324. WALKER-MADDEN v. THE STATE.


BLACKWELL, Justice.

Desmond Walker-Madden was tried by a DeKalb County jury and convicted of murder and aggravated assault, both in connection with the death of Gregory Anderson, Jr., a two-year-old child. Walker-Madden appeals, contending only that the trial court erred when it admitted certain evidence of similar transactions. We find no merit in that contention, but we do note that the trial court erred when it failed to convict and sentence Walker-Madden for two other crimes of which the jury found him guilty. Accordingly, we affirm in part, vacate in part, and remand for the trial court to sentence Walker-Madden for cruelty to children in the first degree and aggravated sexual battery.[1]

---

[1] Gregory was killed on March 27, 2008. Walker-Madden was indicted on June 1, 2010, and he was reindicted on January 23, 2012. Walker-Madden was charged with two counts of malice murder, three counts of felony murder, two counts of aggravated assault, and one count of cruelty to children in the first degree, aggravated battery, and aggravated sexual battery. His trial commenced on January 23, 2012, and the jury returned its verdict on February 3, 2012, finding him guilty on all counts. On February 24, 2012, Walker-Madden was sentenced to imprisonment for life without the possibility of parole on one count of

1. Viewed in the light most favorable to the verdict, the evidence shows that Walker-Madden and his girlfriend, Daniella Bernard, checked into a hotel early on the morning of March 26, 2008. They were accompanied by their baby daughter and Gregory, who was Bernard's son from a prior relationship. Bernard was a college student, and she attended classes that day, leaving the two children in Walker-Madden's care. After receiving a message from Walker-Madden that Gregory was sick, Bernard picked up some medicine and food, and she returned to the hotel. Walker-Madden volunteered to bathe Gregory, and Bernard noticed that Gregory had scratches on his side and a "busted" lip. Walker-Madden told Bernard that Gregory had fallen on the stairs. Bernard also noticed a hole in the wall that she had not seen before and that had not been previously reported to the hotel, although Walker-Madden claimed that it had

malice murder and a consecutive term of imprisonment for twenty years on one count of aggravated assault. As to the other counts of murder, the verdict was vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). The trial court properly merged the remaining count of aggravated assault and the aggravated battery with the malice murder for which Walker-Madden was sentenced. But the trial court erroneously determined that the cruelty to children and aggravated sexual battery also merged for sentencing purposes. See Division 3, infra. Walker-Madden timely filed a motion for new trial on March 20, 2012, and he amended it on December 5, 2014. The trial court denied his motion on February 12, 2015, and Walker-Madden timely filed a notice of appeal on February 26, 2015. The case was docketed in this Court for the January 2016 term and submitted for decision on the briefs.

2

been there when they checked into the hotel. That night and the next morning, Gregory complained that his "tummy" hurt, and Bernard gave him some Motrin.

Bernard returned to her classes on the morning of March 27. As Bernard sat in her 11 o'clock class, Walker-Madden tried to call her, but she did not answer. When she later returned the call around noon, he said that Gregory was sick and throwing up. A hotel guest saw Walker-Madden standing by the door to his room, and the guest heard — from the room — the sound of a child screaming in agony. In another phone call, Walker-Madden told Bernard that Gregory was yelling and screaming and bleeding from his "butt." When she instructed Walker-Madden to call 911, he did so at 12:16 p.m., telling the 911 operator that Gregory was bleeding from his anus. When Bernard and the paramedics arrived at the hotel room, Gregory was lying on the bathroom floor wearing only a shirt. Blood was "everywhere," and Gregory was unresponsive, blue in the face, gasping for air, and bleeding from his rectal area.

Gregory was taken to a hospital by ambulance, and Bernard followed. She asked Walker-Madden to come along, but he declined and remained at the hotel. A housekeeper at the hotel saw blood on the wall, the bed, and the bathroom, and she offered to clean up and change the bloody sheets, but Walker-Madden

3

said that he would do it. He took a trash bag downstairs to an outdoor trash can, and Gregory's underwear and pajama bottoms later were found nearby covered with blood. Walker-Madden told police officers that he and the children were alone when Gregory started bleeding from the rectum, that Bernard told him to stay behind with the baby even though he had said that they should all go the hospital together, and that he cleaned the blood off the bathroom floor.

At the hospital, Bernard saw marks and bruises all over Gregory, none of which she had seen before. Gregory died that afternoon. An autopsy was performed the next day, March 28, and the medical examiner testified that Gregory had suffered a variety of injuries that were not self-inflicted. Two of those injuries caused tremendous blood loss, together resulted in Gregory's death, and both were inflicted within a few hours of his death: a forceful blow to his abdomen that split his pancreas, and a perforation of his rectum by an object inserted therein.

Walker-Madden does not dispute that the evidence is sufficient to sustain his convictions. Nevertheless, we have independently reviewed the record with an eye toward the legal sufficiency of the evidence, as is our customary practice in murder cases. We conclude that the evidence adduced at trial was legally

4

sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Walker-Madden was guilty of the crimes of which the jury, in fact, found him guilty. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Walker-Madden claims that the trial court erred when it admitted evidence of three similar transactions involving prior incidents between him and Bernard. Specifically, the State was allowed to prove that during the summer of 2007, Walker-Madden punched Bernard in the face, that he bit her on the nose on another occasion in the summer of 2007, and that on March 24, 2008 — just a few days before Gregory's death — Walker-Madden bit her on the face. Under our old Evidence Code, which applies in this case,[2] it was settled that

> a similar transaction may be admitted if the State shows that (1) it seeks to introduce the evidence not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility; (2) there is sufficient evidence to establish that the accused committed the independent offense or act; and (3) there is a sufficient connection or similarity between the independent

---

[2] Because his trial took place in 2012, Walker-Madden was tried under our old Evidence Code. See Ga. L. 2011, pp. 99, 214, § 101. For trials beginning on or after January 1, 2013, the admissibility of "[e]vidence of other crimes, wrongs, or acts" is governed by OCGA § 24-4-404 (b). See Bradshaw v. State, 296 Ga. 650, 653 (3) (769 SE2d 892) (2015); Humphrey v. Williams, 295 Ga. 536, 539 (1) (b), n. 2 (761 SE2d 297) (2014).

offense or act and the crime charged so that proof of the former tends to prove the latter.

Lamar v. State, 297 Ga. 89, 90-91 (2) (772 SE2d 636) (2015) (citation omitted). The trial court admitted the similar transactions to show Walker-Madden's "course of conduct" and "bent of mind," which were, at the time of his trial, appropriate purposes for the introduction of evidence of a defendant's prior bad acts.[3] See Brown v. State, 295 Ga. 804, 815 (8) (764 SE2d 376) (2014). Walker-Madden does not dispute that the evidence establishes that he committed the three prior violent acts against Bernard. And as for the connection or similarity necessary to admit evidence of a similar transaction to show "course of conduct" and "bent of mind" under our old Evidence Code, we have explained that, in cases of domestic violence, prior incidents of abuse against family members "are more generally permitted because there is a logical connection between violent acts against two different persons with whom the accused had a similar emotional or intimate attachment." Neal v. State, 290 Ga. 563, 564 (2) (722 SE2d 765) (2012) (citation and punctuation omitted). In this case, Walker-

---

[3] These purposes "have been eliminated from the new Evidence Code." Brooks v. State, ___ Ga. ___, ___ (2) (Case Number S15A1480, decided March 7, 2016) (citation omitted).

6

Madden argues, the trial court applied this more liberal standard for domestic violence incidents in an overly broad way and impermissibly expanded the purposes for admission of the transactions so as to allow them to establish Walker-Madden's propensity for violence.

We have said, however, that evidence that the accused "used violence against an adult with whom he had had a close, loving relationship was admissible to show his bent of mind in using violence against a member of his family, even though the family member was [an] infant." Brinson v. State, 289 Ga. 150, 153 (3) (709 SE2d 789) (2011) (similar transaction evidence that the defendant had used his fists to attack a former girlfriend nine years earlier was admissible). Walker-Madden nevertheless insists that the trial court's admission of such evidence was based on a clearly erroneous finding that he and Gregory had a familial relationship when, in fact, they had no emotional or intimate connection similar to that between Walker-Madden and Bernard. But the fact that Walker-Madden was not Gregory's father and had not lived with him long did not mean that prior incidents of domestic abuse could not meet the requirements for admission of similar transaction evidence. See Collum v. State, 281 Ga. 719, 723 (4) (642 SE2d 640) (2007) (evidence that the defendant had

7

beaten his ex-wife was admissible at his trial for the murder of the 20-month-old son of his girlfriend even though she had moved in with the defendant after they had known each other for only a short time and even though they had lived together for only one to two months when the child died). The evidence shows that Walker-Madden had a relationship with Gregory that was at least as familial in nature as the relationship of the defendant in Collum with his girlfriend's son. Walker-Madden met Gregory when he was newborn and told Bernard that he would accept the baby and treat him as his own. Walker-Madden was a part of Gregory's life — living with him for at least a month, seeing him frequently at other times, and indicating that he was part of his family. After becoming the father of Bernard's second child in December 2007, Walker-Madden stayed with Bernard at one hotel in February 2008, and on March 26, he began to stay with her and the children at the hotel where the crimes occurred. He took on fatherly responsibilities and watched the children while Bernard attended classes. We conclude that the trial court's factual finding of a familial relationship was not clearly erroneous and its admission of the similar transaction evidence did not amount to an abuse of discretion. See Reed v. State,

8

291 Ga. 10, 13-14 (3) (727 SE2d 112) (2012) (explaining our standard of review with respect to similar transaction evidence).

Even assuming, however, that admission of the similar transaction evidence in this case was error, it was harmless. As the trial court correctly recognized in its order denying the motion for new trial, the evidence against Walker-Madden was overwhelming:

> Such evidence included the deliberate infliction of injury on [Gregory]; a time frame from the medical examiner for infliction of [Gregory's] fatal injuries; Walker-Madden's police statement establishing that he was the only one with [Gregory] at the time of the infliction of the fatal injuries; eyewitnesses to Walker-Madden's presence with [Gregory] at the time the fatal injuries were inflicted; Walker-Madden's unexplained attempt to clean up and conceal evidence; and Walker-Madden's failure to put forward any credible defense.

Accordingly, it is highly probable that any error in admitting the prior incidents between Walker-Madden and Bernard did not contribute to the jury's guilty verdict. See Peoples v. State, 295 Ga. 44, 55 (4) (c) (757 SE2d 646) (2014) (explaining that the test for determining nonconstitutional harmless error applies to evidentiary errors such as the alleged erroneous admission of similar transaction evidence).

9

3. Walker-Madden was found guilty of two counts of malice murder and three counts of felony murder, and the trial court properly sentenced him on only one of the malice murder counts. See Brown v. State, 289 Ga. 259, 264 (6) (710 SE2d 751) (2011). We have taken note, however, that the trial court merged, for sentencing purposes, cruelty to children in the first degree and aggravated sexual battery with malice murder. As a result, the court did not convict and sentence Walker-Madden for either of those offenses. But the aggravated sexual battery did not involve the same conduct as the malice murder. And even if the count of cruelty to children charged the same conduct as the malice murder, this Court has held in similar circumstances that those crimes do not merge. Linson v. State, 287 Ga. 881, 885-886 (4) (700 SE2d 394) (2010). Accordingly, we vacate that portion of the trial court's sentencing order in which it merged cruelty to children in the first degree and aggravated sexual battery into the malice murder conviction, and we remand for sentencing on those counts. See Smith v. State, 298 Ga. 357, 359 (2) (782 SE2d 26) (2016); Hulett v. State, 296 Ga. 49, 52-56 (2) (766 SE2d 1) (2014).

Judgment affirmed in part and vacated in part, and case remanded for resentencing. All the Justices concur.

10