In the Supreme Court of Georgia

Decided: July 5, 2016

S16A0354. BLACKLEDGE v. THE STATE.

BLACKWELL, Justice.

Along with several co-defendants, Milton Blackledge was tried by a Cobb County jury and convicted of murder, violation of the Georgia Street Gang Terrorism and Prevention Act (the "Street Gang Act"),[1] and other crimes, all in connection with the killing of Justin Brown. Blackledge appeals, contending that the evidence is insufficient to sustain his conviction for violation of the Street Gang Act, that the trial court erred when it refused to sever his trial from that of his co-defendants, and that the trial court erred when it admitted certain evidence. We find no error and affirm.[2]

---

[1] OCGA § 16-15-1 et seq.

[2] Brown was killed on August 2, 2007. Blackledge, David Hayes, Miracle Nwakanma, Louis Francis, and Muhammed Abdus–Salaam were indicted on December 21, 2007, and each was charged with malice murder, three counts of felony murder, one count of conspiracy to commit armed robbery, four counts of aggravated assault, one count of violation of the Street Gang Act, and one count of unlawful possession of a firearm during the commission of a crime. In addition, Hayes and Nwakanma were charged with unlawful possession of a firearm by a convicted felon and felony murder predicated on unlawful

1. Viewed in the light most favorable to the verdict, the evidence shows that on the evening of August 1, 2007, Blackledge, David Hayes, Miracle Nwakanma, Louis Francis, and Muhammed Abdus-Salaam made plans to rob Dylan Wattecamps, who recently had been involved in a dispute with Abdus-Salaam concerning a sale of marijuana. Early on the morning of August 2, Hayes gave Nwakanma a .380 caliber pistol (which Nwakanma later gave to Francis), and Blackledge drove Nwakanma, Francis, and Abdus-Salaam to the

---

possession of a firearm by a convicted felon. Francis also was charged with possession of cocaine and possession of less than one ounce of marijuana, but those charges were later dead docketed. The prosecution elected to try Abdus-Salaam separately, and it deferred his trial until a later date, after his co-defendants were tried; he eventually entered a plea of guilty to reduced charges. Beginning on May 4, 2009, Blackledge, Hayes, Nwakanma, and Francis were tried by a single jury. The trial court directed a verdict of acquittal for each defendant on one count of aggravated assault, and the jury returned its verdict on May 20, 2009, finding Blackledge, Hayes, Nwakanma, and Francis each guilty of the remaining counts, except malice murder. On June 24, 2009, Blackledge was sentenced to imprisonment for life for the felony murder of Brown predicated on an aggravated assault upon Brown, a concurrent term of imprisonment for ten years for conspiracy to commit armed robbery, a consecutive term of imprisonment for twenty years for aggravated assault upon Scott Keller, a consecutive term of imprisonment for ten years for aggravated assault upon Josh Washington, a concurrent term of imprisonment for fifteen years for violation of the Street Gang Act, and a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a crime. The verdicts as to the other counts of felony murder were vacated by operation of law, Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the remaining aggravated assault upon Brown merged with the felony murder. Blackledge timely filed a motion for new trial on June 25, 2009, and he amended it on January 19, 2012 and February 17, 2012. The trial court denied his motion on May 8, 2013, and Blackledge timely filed a notice of appeal on May 10, 2013. The case was docketed in this Court for the January 2016 term and submitted for decision on the briefs.

2

Smyrna apartment complex in which Wattecamps lived. Hayes drove there separately in his pickup truck, arranged entry for the other four men through a resident that he knew, parked his truck across the street from the entry gate, and waited there as the others entered the apartment complex. Blackledge parked his car near Wattecamps's apartment, and Blackledge and his passengers exited the car, with Blackledge and Nwakanma carrying silver semi-automatic handguns.

Unbenownst to the would-be robbers, Wattecamps was having a party in his apartment, and as Blackledge and his three passengers approached the door, a guest came out, and Blackledge hit him in the face. The four men then ran away, pursued by Wattecamps and several of his guests. Brown, Scott Keller, and Josh Washington, who were walking to the party, heard Wattecamps yell "get them," and they began to chase the four men. Blackledge and Francis then fired several shots at Brown, Keller, and Washington, one of which fatally wounded Brown. Blackledge and his friends were able to climb over a fence and escape in Hayes's truck. Both Francis and Blackledge claimed to have shot Brown, and Hayes drove everyone to Abdus-Salaam's apartment. Six matching .380 caliber shell casings and three .380 caliber projectiles, including the one that fatally wounded Brown, were recovered. All of the shell casings came from

3

the same gun, and two of the projectiles, including the one that killed Brown, were fired from the same pistol. When questioned by investigators, Blackledge initially denied any involvement and provided an alibi, but he later admitted that he was present at the apartment complex at the time that Brown was shot. We previously considered the evidence in this case when we heard appeals by Nwakanma, Francis, and Hayes, whose convictions we affirmed. See Nwakanma v. State, 296 Ga. 493, 494-495 (1) (768 SE2d 503) (2015); Hayes v. State, 298 Ga. 339 (781 SE2d 777) (2016). We now consider this evidence anew with respect to Blackledge.

Blackledge claims that the evidence is legally insufficient to sustain his conviction for violation of the Street Gang Act.[3] In Nwakanma, we indicated

---

[3] Blackledge also complains that the evidence is insufficient to sustain a conviction for felony murder in the commission of a violation of the Street Gang Act, but Blackledge was not sentenced for that crime, and no judgment of conviction as to that crime was entered against him because the verdict as to that felony murder count was vacated by operation of law. See note 2, supra. Accordingly, Blackledge's claim that the evidence is legally insufficient to sustain a conviction for the vacated felony murder is moot. See Hayes, 298 Ga. at 340, n. 2.

Notably, Blackledge does not dispute the legal sufficiency of the evidence as to felony murder predicated on the aggravated assault of Brown, conspiracy to commit armed robbery, the aggravated assault upon Keller, the aggravated assault upon Washington, and the unlawful possession of a firearm during the commission of a crime. We independently have reviewed the evidence that pertains to those crimes, and we are satisfied that the evidence is sufficient to sustain those convictions. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

that the evidence, when viewed in the light most favorable to the verdict, showed that Blackledge and his three co-defendants were associated with "a criminal street gang known as 'MPRC 300,'" 296 Ga. at 494 (1), and we confirmed that finding in Hayes, 298 Ga. at 341 (a). Our present review of the evidence, viewed in the same light, confirms that the evidence was sufficient to show that "MPRC 300" was a "criminal street gang," that Blackledge was associated with that gang, and that the planned robbery was intended to further the interests of the gang.[4] As a result, the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Blackledge was guilty of violating the Street Gang Act. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Blackledge contends that the trial court erred when it denied his pretrial motion to sever his trial from that of Hayes, Nwakanma, and Francis. When

---

[4] The evidence that MPRC 300 was a criminal street gang and that the planned robbery was intended to further the interests of the gang was described in Hayes, 298 Ga. at 341-343 (a). The evidence that Blackledge was associated with that gang includes testimony that MPRC 300 was a hybrid gang that included members of different gangs, that Blackledge admitted to being associated with the Crips gang, that Blackledge had tattoos that were common to members of gangs, and that – just before leaving for the planned robbery of Wattecamps – Blackledge participated in a "freak" during which he and his co-indictees had sex with the "first lady" of the MPRC 300 gang.

several defendants are indicted together for a capital crime, but the State does not seek the death penalty, whether the defendants are to be tried together or separately is a matter committed to the sound discretion of the trial court. OCGA § 17-8-4 (a). "In ruling on a severance motion, the court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses." Hicks v. State, 295 Ga. 268, 278 (4) (759 SE2d 509) (2014) (citation omitted). And to require a severance, "the burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing that a joint trial would lead to prejudice and a consequent denial of due process." Thomas v. State, 293 Ga. 829, 830-831 (2) (750 SE2d 297) (2013) (citation and punctuation omitted). We already considered Francis's claim that his case should have been severed. See Nwakanma, 296 Ga. at 498-499 (3). And just as we did with respect to Francis in his case, we conclude that Blackledge has made no "clear showing of prejudice and a consequent denial of due process." Thomas, 293 Ga. at 831 (2) (punctuation omitted).

6

Blackledge argues that he was prejudiced by a joint trial because the jury might have been confused by the number of co-defendants. But only three co-defendants were tried with Blackledge, and the law and evidence that applied to each of them were substantially identical. See Nwakanma, 296 Ga. at 498 (3). "They were jointly tried for almost the same offenses, which involved the same witnesses, whose credibility the co-defendants jointly attacked, and the State's evidence indicated that they acted in concert." Id. (citations omitted). "In addition, the trial court properly instructed the jury that it was to independently determine the guilt or innocence of each defendant as to each count, and the court provided separate verdict forms for each defendant in order to avoid the potential for confusion." Id. (citations omitted). Blackledge also contends that he was prejudiced by the admission of similar transaction evidence against Hayes and evidence that his co-defendants had gang affiliations. That evidence, however, did not directly implicate Blackledge, and the trial court gave appropriate limiting instructions about the purposes for which the jury could

consider the evidence of Hayes's similar transaction and the gang affiliations. See id.[5]

Blackledge claims that he was prejudiced because he and his co-defendants presented antagonistic defenses. But this argument is belied by the record, which shows that the defenses presented by Hayes, Nwakanma, and Francis were, almost exclusively, supportive of Blackledge. While none of the co-defendants presented any evidence, the closing arguments on behalf of Hayes, Nwakanma, and Francis consistently attacked the credibility of the State's witnesses, and particularly the credibility of Abdus-Salaam, who testified against the other co-defendants. Blackledge "has completely failed to show any specific prejudice such that the joint trial denied him due process." Nwakanma, 296 Ga. at 499 (3) (citations and footnote omitted).

---

[5] Blackledge also argues that he was prejudiced by the joint trial because the State was able to introduce evidence of a pretrial statement made by Francis that incriminated Blackledge. But that statement would have been admissible – under our old Evidence Code (which applied at the 2009 trial), see note 7, infra – even if Blackledge's trial had been severed because it was a statement made by a co-conspirator during the concealment phase of the conspiracy. See Favors v. State, 296 Ga. 842, 844 (2) (770 SE2d 855) (2015) ("once a conspiracy is shown, statements by one co-conspirator during the pendency of the criminal project are admissible against all") (citation omitted).

8

3. Blackledge contends that the trial court erred when it admitted evidence that he also was involved in a North Carolina murder. That murder was committed in October 2006, less than a year before Brown was killed. A police investigator from North Carolina testified that Blackledge gave a statement in November 2006 in which he admitted that he agreed to drive a friend — who was a member of the Crips gang — to an apartment complex so that his friend could engage in a sex act with someone with whom his friend had communicated online (and whom his friend believed was a woman). According to Blackledge's statement, his friend discovered during their drive that the person he had arranged to meet was a man, his friend reacted angrily and expressed his desire to seek retribution, Blackledge continued to drive his friend to the apartment complex, his friend shot the man who approached them when they arrived at the rendezvous location, and Blackledge then drove his friend home from the crime scene.[6]

---

[6] The investigator also testified that Blackledge admitted that he previously owned a .380 caliber semi-automatic handgun.

9

Under our old Evidence Code,[7] a similar transaction was admissible if the

State showed that

> (1) it seeks to introduce the evidence not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility; (2) there is sufficient evidence to establish that the accused committed the independent offense or act; and (3) there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

Lamar v. State, 297 Ga. 89, 90-91 (2) (772 SE2d 636) (2015) (citation omitted).

Here, the trial court admitted the evidence of the North Carolina murder to show

Blackledge's intent and "bent of mind," among other things.[8] And it was proper

for the trial court to admit evidence of the North Carolina murder for these

purposes given that — in both the North Carolina case and the case for which

Blackledge was being tried in Cobb County — Blackledge gave a statement to

---

[7] Because his trial took place in 2009, Blackledge was tried under our old Evidence Code. See Ga. L. 2011, pp. 99, 214, § 101. For trials beginning on or after January 1, 2013, the admissibility of "[e]vidence of other crimes, wrongs, or acts" is governed by OCGA § 24-4-404 (b). See Walker-Madden v. State, ___ Ga. ___ (2), n. 2 (Case No. S16A0324, decided May 9, 2016).

[8] As we recently have explained, "bent of mind" is not a proper purpose for the admission of other acts evidence under Rule 404 (b) of the new Evidence Code. See Brooks v. State, 298 Ga. 722, 727 (2) (783 SE2d 895) (2016). It was, however, a settled ground for admitting similar transaction evidence under the old Evidence Code.

the police in which he admitted his presence but attempted to minimize his involvement. As a result, the North Carolina acts tended to disprove any notion that Blackledge was just in the wrong place at the wrong time and that he did not intend to commit any crime that created a foreseeable risk that someone would be shot.

Blackledge does not dispute that he drove his friend to and from the scene of the North Carolina murder, but he claims that the North Carolina acts are dissimilar from the acts he was alleged to have committed in Cobb County. Under the old Evidence Code, however, the proper focus was on the similarities, not the differences, between the crimes charged and the prior acts. See Brite v. State, 278 Ga. 893, 894-895 (2) (608 SE2d 204) (2005). Even assuming that the jury believed that Blackledge was involved in the North Carolina case only to the extent that he admitted in his statement to the police, jurors could have determined that he knowingly drove a friend who was a known member of a gang (with which Blackledge himself was affiliated) so that his friend could commit a crime and that he then drove his friend home after the friend murdered someone. And in both the North Carolina case and in this case, the murder victims were strangers to Blackledge, the murders were not planned well in

11

advance, the murders were committed in an apartment complex with semi-automatic handguns, and the motive for the crimes was related to a relatively minor dispute. Based on these similarities, the trial court did not abuse its discretion when it concluded that the incidents were similar enough and admitted the evidence of the North Carolina acts. See id.

4. Blackledge claims that the trial court erred when it admitted photographs and photographic captions that had been posted, the State alleged, on MySpace pages maintained by Hayes and Francis. Blackledge says that this documentary evidence was not properly authenticated, but we already have held that "[d]ocuments from electronic sources such as the printouts from a website like MySpace are subject to the same rules of authentication as other more traditional documentary evidence and may be authenticated through circumstantial evidence." Burgess v. State, 292 Ga. 821, 823 (4) (742 SE2d 464) (2013) (citations omitted). Here, a law enforcement officer testified that he discovered the MySpace pages for Hayes (username "DavidMPRC300") and Francis (username "LuisMPRC300") by using their names, dates of birth, residential ZIP codes, and other known identifying information. Testimony was presented that the printouts of the photographs and captions were an accurate

representation of what was posted on those pages, and the officer testified outside the presence of the jury that the photographs posted on the pages depicted Hayes, Frances, and Nwakanma, among others.[9] This testimony was sufficient to authenticate the photographs and captions, and the trial court did not abuse its discretion when it admitted that evidence. See Cotton v. State, 297 Ga. 257, 260 (3) (773 SE2d 242) (2015) (new Evidence Code case, but noting that rules for authentication of social media postings are unchanged from old Evidence Code).

5. Blackledge also claims that the trial court erred when it admitted cell phone records that placed him, Hayes, and Abdus-Salaam at the crime scene near the time of the murder. The trial court admitted the records under the business records exception to the hearsay rule, see former OCGA § 24-3-14,[10] and we will not reverse the admission of such evidence absent an abuse of discretion. See Hurst v. State, 285 Ga. 294, 297 (3) (676 SE2d 165) (2009).

_____

[9] In addition, the State presented the testimony of a legal compliance officer for MySpace, although we previously have held that such testimony is not necessary to authenticate printouts from a social networking site. See Burgess, 292 Ga. at 823 (4).

[10] The business records exception was carried forward, with some changes, into the new Evidence Code and now can be found at OCGA § 24-8-803 (6).

13

Here, as to each set of phone records, a records custodian for the cell phone company gave testimony to show that the records were created in the regular course of business at or near the time that the phone calls were made and the cell towers detected the presence of the phones. This testimony provided a sufficient basis for the trial court to determine that the records were admissible under former OCGA § 24-3-14. See Kilgore v. State, 295 Ga. 729, 732 (2) (763 SE2d 685) (2014).[11]

6. Finally, Blackledge argues that his constitutional right to confrontation was violated when the trial court allowed testimony about a pretrial statement made by Francis (who did not testify), which implicated Blackledge as the shooter. But the Confrontation Clause affords a right to confront a co-defendant about a pretrial statement only when the statement was "testimonial," meaning that a primary purpose for which the statement was given "was to establish evidence that could be used in a future prosecution." Favors v. State, 296 Ga. 842, 845 (2) (770 SE2d 855) (2015) (citation and punctuation omitted). Here, Francis made the statement to a jailhouse informant during the concealment

---

[11] Even if it were otherwise, Blackledge was not harmed by the introduction of the cell phone records, given that he admitted that he and his co-defendants were present at the apartment complex around the time that Brown was killed.

14

phase of the conspiracy, and it is clear that the statement was not testimonial in nature. As a result, this enumeration of error has no merit.

Judgment affirmed. All the Justices concur.