In the Supreme Court of Georgia

Decided:   September 22, 2014

S14A1099. KILGORE v. THE STATE.

BLACKWELL, Justice.

Gary Kilgore was tried by a Clayton County jury and convicted of the murder of Souphoth Thammavongsa, as well as several other crimes related to the robbery of a video store that Thammavongsa owned. Kilgore appeals, contending that the trial court erred when it admitted evidence pursuant to the business records exception to the hearsay rule. We find no error, however, and we affirm.[1]

---

[1] The crimes were committed on October 19, 2008. Along with co-defendants Jesse Mathis and Dexter Armstrong, Kilgore was indicted on April 29, 2009, and all three men were charged with malice murder, three counts of felony murder, seven counts of armed robbery, eight counts of aggravated assault, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. All three men were tried together, beginning on February 7, 2011. The counts for possession of a firearm by a convicted felon and felony murder predicated on that possession charge were bifurcated from trial and later dismissed, the trial court directed a verdict as to two of the armed robbery counts, and the jury returned its verdict on February 16, 2011, finding Kilgore guilty on all the remaining counts except one armed robbery. The jury also found Mathis guilty of felony murder and multiple counts of armed robbery and aggravated assault (but not guilty of malice murder), and it found Armstrong guilty only of aggravated assault. The trial court sentenced Kilgore to a term of imprisonment for life for malice murder and consecutive terms of imprisonment for twenty years each for the armed robberies of Steven Ratsamy, Bounmy

1. Viewed in the light most favorable to the verdict, the evidence shows that on October 19, 2008, Kilgore, Jesse Ben Mathis, and Dexter Armstrong entered the Thai Video store in Riverdale to conduct a robbery. The men immediately demanded that everyone inside the store drop to the ground. Thammavongsa pulled out a gun, but he was shot and killed by Kilgore before he could use it. The assailants then threatened the six other men inside the store, telling them that the gunmen knew there was money in the store and that, "[i]f you're black, you ain't got nothing to worry about." Kilgore and Mathis forced Thammavongsa's son to look at the body of his father and threatened to shoot him if he did not show them where to find the store's money. When this proved unsuccessful, Kilgore and Mathis robbed several of the men inside the store of

Kong, and Maceo Hill and the aggravated assaults of Kelly Babb, Mose Brown, and Soksavan Vilaysak, and a consecutive term of five years for possession of a firearm during the commission of a crime. The remaining counts were merged or vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Kilgore filed an untimely motion for new trial on March 29, 2011, the trial court denied that motion on February 4, 2013, and this Court dismissed Kilgore's appeal from the denial of the untimely motion on April 29, 2013. See Case No. S13A1037. On May 1, 2013, Kilgore filed a motion for leave to file an out-of-time motion for new trial, which was granted by the trial court on May 20, 2013. See Washington v. State, 276 Ga. 655, 656 (1) (581 SE2d 518) (2003). Kilgore filed a second motion for new trial on June 19, 2013, and the trial court denied that motion on the merits on November 11, 2013. Kilgore timely filed a notice of appeal on December 5, 2013. The case was docketed in this Court for the April 2014 term and submitted for decision on the briefs.

their money or other possessions in their pockets. Soon thereafter, the assailants left the store, apparently unaware that there was almost $4,000 in Thammavongsa's pockets.

Immediately after the robbery, Armstrong called his then-girlfriend from a cell phone and asked her to pick him up from a gas station near the video store. When Armstrong's girlfriend arrived, he told her about the robbery, including that Kilgore had killed the store's owner. Later, two of the victims identified Kilgore in a photo line-up, and a third victim identified him at trial. And the records custodian for a cell phone company presented evidence at trial that placed Kilgore's cell phone near the crime scene at and around the time the crimes were committed.

Kilgore does not dispute that the evidence is sufficient to sustain his convictions. Nevertheless, consistent with our usual practice in murder cases, we have reviewed the evidence and considered its legal sufficiency. We now conclude that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Kilgore was guilty of the

3

crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).[2]

2. In his sole enumeration of error, Kilgore claims that the trial court erred when it admitted cell phone records — and testimony from the records custodian of the cell phone company about those records — indicating that Kilgore's cell phone was near the video store at and around the time the crimes were committed. The trial court determined that the evidence was admissible under the business records exception to the hearsay rule, see former OCGA § 24-3-14,[3] and we will not reverse such a determination absent an abuse of discretion. See Hurst v. State, 285 Ga. 294, 297 (3) (676 SE2d 165) (2009); Santana v. State, 283 Ga. App. 696, 698 (1) (642 SE2d 390) (2007) (trial court did not abuse its discretion when it admitted cell phone records under OCGA § 24-3-14).

Former OCGA § 24-3-14 (b) provided that:

---

[2] We affirmed Mathis's convictions in Mathis v. State, 293 Ga. 837 (750 SE2d 308) (2013), and the Court of Appeals affirmed Armstrong's convictions in Armstrong v. State, 325 Ga. App. 33 (752 SE2d 120) (2013).

[3] This case was tried before January 1, 2013, and we therefore cite to OCGA § 24-3-14 of the old Evidence Code. See Ga. L. 2011, pp. 99, 214, § 101. We note, however, that the business records exception was carried forward, with some changes, into the new Evidence Code and now can be found at OCGA § 24-8-803 (6).

4

> Any writing or record . . . made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter.

And former OCGA § 24-3-14 (d) required that the provision "shall be liberally interpreted and applied." See Davis v. Harpagon Co., 283 Ga. 539, 541 (2) (661 SE2d545) (283 Ga. 539) (2008). Before a such a business record could be admitted, however, "a foundation [had to] be laid through the testimony of a witness who is familiar with the method of keeping records and who can testify thereto and to facts which show that the entry was made in the regular course of a business at the time of the event or within a reasonable time thereafter." Suarez v. Suarez, 257 Ga. 102, 103-104 (2) (355 SE2d 649) (1987) (citation omitted). And if a party believed that a foundation had not been established sufficiently, he was required to "specify the foundation element he contends is lacking." Tolver v. State, 269 Ga. 530, 532 (2) (500 SE2d 563) (1998).

Here, the records custodian for the cell phone company testified that one of the records at issue listed the locations of all the company's cell phone towers in Georgia during a span of time that included the date of the crimes and

continued until changes to the towers were made in January 2009. The other records showed incoming and outgoing phone calls for Kilgore's cell phone (as well as for a phone owned by Armstrong's girlfriend) and indicated which tower on the cell phone tower list handled each of those calls, usually the one closest to the cell phone at the time of the call.[4] The custodian further testified that the records were made in the regular course of business and that engineers with personal knowledge of the facts contained in the cell phone tower list would update that record "right away" after a new cell phone tower was added or there was any other change in the capacity of the towers.

According to Kilgore, the foundation for the records was inadequate because the records custodian could not recall the starting date for the time span that he claimed the cell phone tower list covered. But the record custodian testified unequivocally that the list covered the dates of the calls relevant to the case. The inability of the custodian to testify with more detail about the list

---

[4] The records custodian later clarified that cell phones do not always use the closest tower but instead may be routed by an automated switching center to another tower, especially if the tower closest to the cell phone was already being heavily utilized. Although not raised by Kilgore, the inability of the records custodian to state definitively which cell phone tower was closest to Kilgore's cell phone around the time of the crimes went to the weight of the evidence and not its admissibility. See Hurst, 285 Ga. at 297 (3).

went only to the weight of the evidence and the credibility of his assertion that the list showed the towers as they existed on the crime date, not to the admissibility of the records. See Hurst, 285 Ga. at 297 (3). The testimony of the records custodian provided a sufficient basis for the trial court to determine that the records — and the record custodian's testimony explaining what was contained in the records — were admissible under the business records exception to the hearsay rule. See id.

Judgment affirmed. All the Justices concur.