**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

June 19, 2018

# In the Court of Appeals of Georgia

A18A0323. BEAVERS v. THE STATE.

MERCIER, Judge.

In March 2007, Roger Jason Beavers entered a guilty plea in the Superior Court of Union County, Georgia to two counts of aggravated assault and one count of false imprisonment, and was sentenced to a total of twenty years, with eight years to be served in confinement and the following twelve to be served on probation. His sentence included a general condition of probation that Beavers must "not violate the criminal laws of any governmental unit." On September 16, 2015, a "Warrant for Arrest of Probationer" was issued in Union County, and a probation revocation petition was filed on February 6, 2017, alleging that Beavers had violated the conditions of his probation by "violat[ing] the criminal laws of any governmental unit," specifically, committing the new offense of possession of a firearm by a convicted

felon in Cherokee County, North Carolina on or about August 27, 2015. Following a probation revocation hearing on February 6, 2017, the trial court revoked the probation provisions of Beavers's original sentence on the basis of the firearm offense. In an order entered the same day, the trial court revoked four years, ten months and twenty-five days of Beavers's probation, noting that this period of confinement would run until December 31, 2021. This period is less than the balance of Beavers's probation, which ends March 6, 2027.

Pursuant to our grant of his application for discretionary review, Beavers appeals from the trial court's order revoking his probation, contending that the evidence was insufficient to demonstrate that he committed the new offense of possession of a firearm by a convicted felon; that the trial court erred in admitting hearsay testimony regarding a document executed by Beavers acknowledging that he was prohibited from possessing a firearm; and that the trial court erred in imposing a greater sentence than was authorized by law. For the reasons that follow, we affirm the trial court's revocation of Beavers's probation, but vacate the revocation sentence and remand this case with direction.

1. We first examine Beavers's contentions regarding the sufficiency of the evidence to support the trial court's finding that he violated his probation by

committing a new crime while on probation. "A court may not revoke any part of any probated or suspended sentence unless . . . the evidence produced at the revocation hearing establishes by a preponderance of the evidence the violation or violations alleged." OCGA § 42-8-34.1 (b). "This [C]ourt will not interfere with a revocation unless there has been a manifest abuse of discretion on the part of the trial court. Accordingly, if admissible evidence is presented in support of the allegations regarding revocation of probation, this [C]ourt will affirm." *Haji v. State*, 331 Ga. App. 116, 118 (3) (769 SE2d 811) (2015) (citations and punctuation omitted).

Here, Beavers is alleged to have committed the new crime of possession of a firearm by a convicted felon in North Carolina. N. C. Gen. Stat. § 14-415.1 (a) pertinently provides that "[i]t shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm[.]" Beavers does not dispute that he had previously been convicted of a "felony," or that the firearm at issue was a "firearm," as those terms are defined and explained in that statute. See N. C. Gen. Stat. § 14-415.1 (a), (b). Rather, he contends that the evidence at the revocation hearing demonstrated only his mere proximity to the firearm and was thus insufficient to demonstrate that he possessed it, and that the circumstantial evidence failed to exclude every reasonable hypothesis other than his

3

guilt. "Although the State's burden of proof is lower in a probation revocation case, a probationer's mere presence in the area where the prohibited item is found will not justify a probation revocation based on possession of the prohibited item, even under the more relaxed preponderance of the evidence standard." *Boatner v. State*, 312 Ga. App. 147, 149 (1) (717 SE2d 727) (2011) (citation and punctuation omitted). "A person is in constructive possession of an object when he knowingly has both the power and intention at a given time to exercise dominion over the object. A finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity." *Fluker v. State*, 296 Ga. App. 347, 349 (674 SE2d 404) (2009) (citations and punctuation omitted).

Viewed in the light most favorable to upholding the trial court's findings (see *Marks v. State*, 306 Ga. App. 824 (703 SE2d 379) (2010)), the evidence at the revocation hearing in this case included the following. On August 27, 2015, Deputy R. C. with the Cherokee County Sheriff's Office in North Carolina and C. H. , a probation officer, went to Beavers's residence in Cherokee County, North Carolina to perform a warrantless search of the residence pursuant to the Fourth Amendment waiver that was a special condition of Beavers's probation sentence. When they arrived at Beavers's residence, C. H. spoke with Beavers, who was there alone.

4

Deputy R. C. turned right inside the residence, to one of the two bedrooms in the home. Inside the closet in that bedroom, Deputy R. C. found a pair of coveralls with the legs tied at the bottom, and a shotgun inside one of the legs.

Beavers testified at the probation revocation hearing that the residence that was searched belonged to him. Deputy R. C. testified that he "would . . . consider [the bedroom in which the gun was found to be] the master bedroom." When asked if anything else was found inside the closet where the gun was located, Deputy R. C. testified, "[j]ust his personal belongings, clothes, things along that line." He testified that he was not aware of anyone else living in Beavers's residence. The State introduced a copy of a magistrate's order from Cherokee County, North Carolina, finding that there was probable cause to believe that Beavers committed the offense of possession of a firearm by a convicted felon on August 27, 2015.

Testimony from Deputy R. C. demonstrated that Beavers's mother J. M. B. lived in another home approximately 30 to 40 yards away from Beavers's residence. Beavers's son A. B., who was 19 years old at the time of the revocation hearing, testified that at the time of the hearing, he lived with his grandmother J. M. B. but he also lived at Beavers's residence when Beavers was home. He testified that in August 2015, he was living with Beavers, that the bedroom to the right of the front door of the

5

home was A. B.'s, and that he had placed the gun in the coveralls in the closet. A. B. testified that on the day in question, he had been out hunting, stopped at Beavers's residence for water, and put the gun inside the coveralls so that Beavers would not see it. A. B. testified that this occurred around noon, when Beavers was at work.

A. B. also testified that he usually kept his gun at J. M. B.'s home, and when asked where in J. M. B.'s home the gun was kept, he said "[i]n my room." He noted that he had a room in both homes and that his room at J. M. B.'s residence had a gun rack. His explanation for why he did not walk the estimated 30 to 40 yards to J. M. B.'s residence to put the gun away, when Beavers was at work and A. B. had "three or four more hours" to take the gun to J. M. B.'s residence before Beavers came home, was that he had made a "stupid mistake."

A. B. testified that when Beavers was arrested, A. B. told Deputy R. C. that the shotgun belonged to him, and that he had placed the gun in Beavers's home. However, Deputy R. C. testified that when he escorted Beavers to the patrol vehicle, A. B. was present outside Beavers's home, but Deputy R. C. did not speak with A. B. Deputy R. C. testified that J. M. B. had previously reported A. B. as a runaway, and it was Deputy R. C.'s understanding at that time that A. B. lived with J. M.B., as J. M. B. showed the Deputy A. B.'s bedroom at her residence.

6

Beavers's girlfriend M. B. testified that she and Beavers shared the master bedroom in Beavers's residence, which she stated is on the right side of the residence. She then said the master bedroom is on the right side of the residence if the residence is entered from the back door. On cross-examination, M. B. admitted that in a prior North Carolina criminal case involving a shooting in which Beavers was present, she gave "two different stories on the stand" and was charged with perjury in connection with her testimony. She testified that in that prior incident, she had accidentally shot herself with a pistol, Beavers was with her and they had had an argument, and she had initially told law enforcement officers that Beavers had possessed the gun. In the instant case, the court found A. B.'s and M. B.'s testimony to have "no credibility."

We disagree with Beavers that the evidence was insufficient to support the finding that he violated North Carolina law and thus the terms of his probation by committing the offense of possession of a firearm by a convicted felon. The instant case is distinguishable from *Scott v. State*, 305 Ga. App. 596 (699 SE2d 894) (2010), and *Boatner*, supra, cited by Beavers. In those cases, the only evidence linking the defendants to the contraband at issue was their spatial proximity to the items. See *Scott*, supra at 599 (defendant was a passenger in a vehicle that belonged to the driver and in which drugs were found in the center console); *Boatner*, supra at 148-149 (1)

7

(the only evidence linking defendant to a rifle that was leaning against the exterior of his trailer was spatial proximity; it could have belonged to any of his neighbors). Here, in contrast, the State elicited testimony demonstrating that Beavers owned and resided in the home in which the firearm was found hidden in clothing in a closet. "If the State presents evidence that a defendant owned or controlled premises where contraband was found, it gives rise to a rebuttable presumption that the defendant possessed the contraband." *Bailey v. State*, 294 Ga. App. 437, 439-440 (1) (669 SE2d 453) (2008) (citation and punctuation omitted).

> This presumption of constructive possession arising from ownership or control of the premises can be overcome by evidence that other persons had *equal* access to the contraband found there. But absent unrebutted affirmative evidence demanding a finding of equal access, the question of whether the presumption of possession has been overcome is for the [factfinder] to resolve.

*Dickerson v. State*, 312 Ga. App. 320, 321 (1) (718 SE2d 564) (2011) (citations and punctuation omitted) (emphasis supplied); see *Owens v. State*, 202 Ga. App. 785, 786-787 (2) (415 SE2d 704) (1992) (testimony that guns were found in common areas of a residence owned by defendant authorized submission of the gun possession charge to the jury; and testimony that there was no evidence of anyone else living

8

inside the residence authorized the jury's rejection of the defendant's claim that the guns belonged to his boarder). "In a probation revocation, issues of witness credibility are reserved for the trial court." *Boatner*, supra at 150 (3) (citation omitted).

Here, the evidence gave rise to the presumption of Beavers's constructive possession of the shotgun, and the trial court found that the defense's evidence to rebut that presumption lacked credibility. "The circumstantial evidence need not exclude every hypothesis of his guilt but only reasonable ones." *Moore v. State*, 242 Ga. App. 208, 210 (1) (529 SE2d 210) (2000) (citation omitted). Additionally, there was no evidence that others had *equal* access to the premises in which the firearm was found. See generally *Dickerson*, supra. Because there was admissible evidence to support the accusation that Beavers possessed a firearm while he was a convicted felon in violation of North Carolina law, which constituted a violation of the conditions of his probation, we disagree that the evidence was insufficient to support the trial court's revocation of his probation. See generally *Haji*, supra.

2. Beavers contends that the trial court erred by allowing Officer E. M., a Georgia probation officer, to testify that Beavers was given a written notice that he was prohibited from possessing a firearm, because a different probation officer (Officer K. B.) reviewed the document with Beavers and thus E. M.'s testimony constituted

hearsay. The document in question (the "firearms acknowledgment"), signed by Beavers and signed by K. B. as a witness to Beavers's signature, advised that pursuant to Georgia law and federal law, Beavers was prohibited from receiving, shipping, possessing, transporting or attempting to purchase a firearm. We find Beavers's argument regarding the firearms acknowledgment unavailing.

The State argued at the revocation hearing, and argues on appeal, that the firearms acknowledgment was admissible under the business records exception to the hearsay rule. See OCGA § 24-8-803 (6).[1] At the hearing, Beavers's counsel argued, "[m]y only concern is that we don't have the witness that went over this with [Beavers]. . . .I understand [the prosecutor is] saying it's a business records exception, but we object to it coming in." The trial court admitted the firearms

---

[1] OCGA § 24-8-803 (6) pertinently provides: "[u]nless the source of information or the method or circumstances of preparation indicate lack of trustworthiness and subject to the provisions of Chapter 7 of this title, a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, if (A) made at or near the time of the described acts, events, conditions, opinions, or diagnoses; (B) made by, or from information transmitted by, a person with personal knowledge and a business duty to report; (C) kept in the course of a regularly conducted business activity; and (D) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with paragraph (11) or (12) of Code Section 24-9-902 or by any other statute permitting certification."

acknowledgment and the related testimony pursuant to the business records exception. A trial court's determination that evidence is admissible under the business records exception will not be reversed absent an abuse of discretion. *Kilgore v. State*, 295 Ga. 729, 730 (2) (763 SE2d 685) (2014).

Beavers did not raise an objection at the hearing based on the foundation required to admit a record under OCGA § 24-8-803 (6), and does not contend here that the proper business records foundation was not laid. Rather, Beavers argues that because K. B. (the probation officer who reviewed the firearms acknowledgment with him) was not testifying about the document at the hearing, it constitutes inadmissible hearsay. But as an exception to the general rule of excluding hearsay, OCGA § 24-8-803 (6) permits the admission of business records based on "the testimony of the custodian or other qualified witness[.]" Beavers does not contend that E. M. was not a qualified witness, and has not demonstrated that the trial court abused its discretion in admitting the firearms acknowledgment. See generally *Kilgore*, supra.

3. Beavers contends that the trial court erred by not considering North Carolina law when imposing the sentence in this case, and by revoking 4 years, 10 months and 25 days of his probation (the equivalent of 58 months and 25 days) because this amount exceeds the maximum sentence for the North Carolina law that he violated

11

(N.C. Gen. Stat. § 14-415.1 (a)) and thus exceeds the maximum sentence authorized for revocation of his Georgia probation sentence based on the commission of that new crime. See OCGA § 42-8-34.1 (d). We agree.

OCGA § 42-8-34.1 (d) pertinently provides:

If the violation of probation or suspension alleged and proven by a preponderance of the evidence . . . is the commission of a felony offense, the court may revoke no more than the lesser of the balance of probation or the maximum time of the sentence authorized to be imposed for the felony offense constituting the violation of the probation. For purposes of this Code section, the term 'felony offense' means:

(1) A felony offense;

(2) A misdemeanor offense committed in another state on or after July 1, 2010, the elements of which are proven by a preponderance of evidence showing that such offense would constitute a felony if the act had been committed in this state[.]

Pursuant to OCGA § 16-1-3 (5), a felony is "a crime punishable by death, by imprisonment for life, or by imprisonment for more than 12 months."

Here, Beavers was found to have violated North Carolina law by possessing a firearm while a convicted felon, pursuant to N. C. Gen. Stat. § 14-415.1 (a). That statute provides that "[e]very person violating the provisions of this section shall be

punished as a Class G felon." Id. According to North Carolina's felony sentencing statute, this violation is punishable by imprisonment for more than 12 months. See N. C. Gen. Stat. § 15A-1340.17 (c), (d); N. C. Gen. Stat. § 15A-1340.11. Thus, the violation of North Carolina law is a felony as defined by Georgia statute (see OCGA § 16-1-3 (5)) and the trial court was authorized to revoke the lesser of (1) the balance of Beavers's probation (10 years and one month at the time of the probation revocation hearing, or the equivalent of 121 months) or (2) the maximum time of the sentence authorized to be imposed for the felony offense of possession of a firearm by a convicted felon. Beavers and the State disagree about which state's law (North Carolina's or Georgia's) determines "the maximum time of the sentence authorized to be imposed" for his new offense.

The State contends that the trial court correctly "looked to the Georgia statute [OCGA § 16-11-131]" when sentencing Beavers. OCGA § 16-11-131 (b) provides that possession of a firearm by a convicted felon is punishable by up to 5 years (equivalent to 60 months). Beavers contends that the trial court should have instead considered the maximum sentence prescribed by North Carolina law for the violation of N. C. Gen. Stat. § 14-415.1 (a). The maximum punishment authorized for the offense of possession of a firearm by a convicted felon under North Carolina law depends on the

13

defendant's criminal history and the presence or absence of mitigating or aggravating factors. See N. C. Gen. Stat. § 15A-1340.17 (c), (d). But even assuming that a defendant's criminal history falls under the highest "prior record level" under the North Carolina sentencing statute, and assuming the presence of aggravating factors, the maximum punishment authorized for this offense would be 39 months. Id.

"When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. When a statute contains clear and unambiguous language, such language will be given its plain meaning and will be applied accordingly." *Williamson v. State*, 295 Ga. 185, 186 (1) (758 SE2d 790) (2014) (citations and punctuation omitted). OCGA § 42-8-34.1 (d) refers to the "maximum time of the sentence authorized to be imposed *for the felony offense constituting the violation of the probation*." (Emphasis supplied). The definition of "felony offense" in that statue includes crimes that are felonies, or are misdemeanors but would be felonies if committed in Georgia. OCGA § 42-8-34.1 (d) (1)-(3). Thus, when the new offense in question is a felony, the maximum punishment referred to OCGA § 42-8-34.1 (d) is the punishment *for that felony*. The statute does not state that the maximum punishment to be considered for such an offense is the punishment provided for the equivalent offense under Georgia law. See OCGA § 42-8-34.1 (d).

The authorized punishment for Beavers's violation of N.C. Gen. Stat. § 14-415.1 (a) (at most, 39 months)[2] is less than the balance of his probation at the time of the probation revocation hearing (121 months, ending March 6, 2027). Pursuant to OCGA § 42-8-34.1 (d), the trial court was authorized to revoke no more of Beavers's probation time than the maximum time of the sentence authorized to be imposed for his violation of N. G. Gen. Stat. § 14-415.1 (a) by N. C. Gen. Stat. § 15A-1340.17 (c), (d). We therefore vacate Beavers's revocation sentence and remand this case for resentencing.

*Judgment affirmed in part; judgment vacated in part and case remanded with direction. Dillard, C. J., and Doyle, P. J., concur.*

---

[2] The maximum punishment authorized may be less than 39 months, depending on Beavers's criminal history and whether mitigating or aggravating factors were present. See N. C. Gen. Stat. § 15A-1340.17 (c), (d).

15